## MORGAN L. SMITH vs. JAMES S. MONTGOMERY — Appeal from Colorado County.

If the *whole* credit be not given to the person who comes in to answer for another, his undertaking is collateral, and his liability is only that of a guarantor.

A letter of guaranty, addressed to two persons, but delivered to one only, and acted upon by that one without reference to the other, does not bind the writer as a guarantor *to him* who alone acted on the letter.

The liability of a guarantor or surety cannot be extended, by implication or otherwise, beyond the *actual terms* of his engagement.

Case stated in the opinion of the court.

HARRIS AND PERLEY for appellant.

The liability of Montgomery is that of a principal debtor. The promise to pay depends on the condition, only, that Smith would furnish the goods to Tennard. It is not a promise to pay if Tennard should fail, but it is an absolute promise to see him paid (which is a promise to pay himself) if the goods are furnished.

When the letter was written, and the proposition accepted by Smith, the civil law was in force in Texas; and the validity, interpretation and obligation of the contract must be determined by that law; and there is no principle better settled in the civil law than "that, in whatever manner a *party binds himself*, he shall be bound." [5 Martin, 194; 2 N. S. 672; Dallam, 403; Flemming *vs.* Powel, this court.]

Montgomery having bound himself absolutely to pay, no demand of Tennard, or notice of non-payment, was necessary. Neither was it necessary that Smith should have given written notice to Montgomery of the acceptance of the proposition. The furnishing the goods was a sufficient acceptance. [2 N. S. 245.] The proof shows that the goods were furnished by Smith, and that Montgomery had notice of it.

The fact that Pilgrim had formerly been a partner of Smith, and that his name was also on the letter, cannot affect Smith's right to recover in this action. The letter was directed to "Col. Smith," and it was proven that Morgan L. Smith, the plaintiff, was that person.

There was no laches or neglect on the part of Smith to collect the debt from the estate of Tennard. Smith was not bound to discuss the property of Tennard's estate —

1st. Because the proof shows that it was insolvent. The insolvency being established, the authorities are uniform that the right of the surety to claim discussion ceases, and the debt becomes one *in solido* against the principal and surety. [4 La. R. 7; 3 N. S. 134.]

2d. Because no property was pointed out and no money advanced. A surety may be sued before suing the principal; and his requiring a discussion will not avail him, *if he have not pointed out property for discussion* and advanced the expenses necessary therefor. [5 Martin, 674; 6 Martin, 562; 1 N. S. 478; 12 Martin, 378; 9 Martin, 385; 11 La. R. 136; 13 La. R. 276; 1 Poth. on Obl. 295.]

If the contract of Montgomery was only that of a surety, as is contended by the counsel for the appellee, then the statute of limitations cannot avail him; because the account, at the time this suit was instituted, was *not an open account*, but had been carried into judgment in the probate court against the estate of the principal debtor; and whenever the rights of the principal creditor have been ascertained, in a suit between debtor and creditor, the judgment forms *res judicata* between creditor and surety. [4 La. R. 529.]

As the statute has not barred or extinguished the obligation of the principal debtor, it cannot operate as a bar to extinguish the liability of the surety. Besides, this was a written obligation on the part of the surety to pay $3,000, and would not be barred until the expiration of four years. The suit was instituted in a little more than two years after the debt became due.

The authorities cited by the counsel for the appellee do not

sustain the positions he has assumed. "Notice and demand on the guarantor, at any time before action brought, will be sufficient, provided he has not been prejudiced by want of notice." [12 Pick. 133, 416; 12 Peters, 497.]

Under the words, "I will warrant A. to pay a certain sum according to his agreement, in sixty days," the guarantor was held bound on A.'s failure to pay, without demand on A. or notice to himself. [Smith *vs.* Ide, 2 Vernon, 301.]

A third person guarantied the payment of a note in these words: "I hereby guaranty the payment of this note in four years from its date." It was held that this was an absolute engagement that the note should be paid by the maker or himself within the time specified, and that demand and notice were not necessary. [7 Cowen, 523.]

A suit against the principal debtor is not necessary to sustain an action against the guarantor, unless such suit is required by the very terms of the contract. [11 Wend. 100.]

Notice of non-payment need not be given to the guarantor if the principal debtor is insolvent. [9 Serg. & R. 198; 11 Wend. 100.]

WEBB for appellee.

1. When a letter of guaranty is addressed to a *particular* firm or individual, no other person is authorized to give a credit upon the faith of it to charge the guarantor. [Grant *vs.* Naylor, 4 Cranch, 224; 2 Cond. 95; Walsh *vs.* Beekman, 10 Johns. 180; Myers *et al. vs.* Edge, 7 Durnf. & East. 254; Penoyer *vs.* Watson, 16 Johns. 100; Allison *vs.* Rutledge, 5 Yerger, 193; 3 Wilson's R. 539; 4 Taunt. 623; 3 Camp. 63; 2 Supt. U. S. Dig. p. 89, sec. 30; id. p. 96, sec. 163.]

2. The letter of Mr. Montgomery was only *an offer* to guaranty. It was not *a contract* until the offer was accepted *by those to whom it was made;* and, to bind the person making it, notice must have been given him, within a reasonable time, that it was accepted. [7 Peters' R. 114, 125; 10 Peters, 482, 491, 494, and on; 12 Peters, 207, 213; 10 Johns. 312.]

3. The undertaking of Mr. Montgomery was only collateral; and to bind him, the terms and conditions of the offer must

have been *strictly* pursued by those *to whom the offer was made.* [2 U. S. Cond. Rep. 423, 428; 17 Wend. 422.]

4. To charge the guarantor upon the letter, notice must not only have been given to him, within a reasonable time, of the acceptance of the offer, but also *of the amount* furnished on the guaranty. [7 Peters' R. 126; 2 U. S. Cond. R. 417, 423, 428; 5 Peters, 624, 629, 639; 2 Ala. R. 373; 1 Mason, 92, 96; 16 Johns. 67; 4 Howard's Miss. R. 231.]

5. If Smith had a right to accept and act upon a letter addressed to Smith and Pilgrim, offering to guaranty for Tennard to the extent of $3,000, he had no right to extend a credit to Tennard beyond that sum. [17 Wend. 179; 10 Peters, 493.] The record shows that a credit was given to Tennard of near $5,000.

6. It is an afterthought to regard Montgomery as the person to whom the credit was originally given, and it comes too late to be available to the plaintiff. If the letter had been addressed to Smith (which it was not), its very terms show that it was a collateral undertaking to see that Tennard paid; and Smith, if he acted with reference to the letter at all, must have so viewed it, because his own books show that he gave the credit to Tennard, and charged the goods to him *alone.* Besides, he afterwards presented the account to the administrator of Tennard as a claim against his estate. This he would not have done if the credit had been given originally and exclusively to Montgomery.

It was, then, by the plaintiff's own showing, a debt against Tennard, alleged to have been guarantied by Montgomery, and, being on an open account, it was barred by the statute of limitations when this suit was instituted. [2d and 3d sections Act of Limit. 1841, p 164.]

7. The finding of the jury is conclusive *as to the facts.* The questions, as to whom the letter was addressed? to whom the credit was given? and the notices (if any) to Montgomery, were all in issue, and all were found for the defendant. The correctness of this finding upon *the facts* was not disputed in the court below, otherwise there would have been a motion for a new trial,

upon the ground that the jury found contrary to the evidence; and, there having been no such motion, it cannot be controverted.  [1 Texas R. 70, 311.]

Mr. Justice WHEELER delivered the opinion of the court.

The appellant instituted suit to recover of the appellee three thousand dollars, the value of goods furnished by the plaintiff to one Tennard, on a letter of credit given by the defendant. The letter is set out in the petition as follows:

"COLORADO, Dec. 27, 1839.

"Col. SMITH & PILGRIM —

"*Gentlemen:* Mr. A. W. Tennard wishes to get some dry goods on time; if you will furnish, I will see you paid as far as to the amount of three thousand dollars.

"And much oblige yours with respect,

"JAMES S. MONTGOMERY."

The petition alleges, in substance: That this letter was addressed on the back of it to the plaintiff, Smith; and that it was, by mistake, addressed upon its face to Smith & Pilgrim, for that, at its date, Pilgrim had withdrawn from the firm; that the letter was delivered to the plaintiff by Tennard; and that, in consideration of its contents, he sold and delivered to Tennard goods of the value of three thousand dollars, on time, and gave notice thereof to the defendant; that Tennard departed this life shortly afterwards; that his estate is insolvent; and that the account had been admitted by his administrator, and ranked among the acknowledged debts of the succession.

The defendant, in his answer, contests the right of the plaintiff to maintain his action on the ground that his undertaking was collateral, and only that of a guarantor or surety, and was not entered into with the plaintiff, but with the firm of Smith & Pilgrim, who alone could acquire a right of action upon it.

There were also several other grounds of defense set up in the answer, and relied on by the defendant in the court below. There was a verdict and judgment for the defendant, and the plaintiff appealed.

Of the various questions presented for our consideration in

argument, it does not become necessary, in the view we have taken of the case, to determine but one. That is —

*Can the plaintiff maintain this action upon the letter set forth and relied on to charge the defendant?*

That the liability of the defendant, created by the contract set out, is not, as has been supposed, that of a principal debtor, but of a guarantor only, is, we think, apparent from the very terms of the contract itself; and that it was so understood and treated by the plaintiff, is manifest from the fact that he gave the credit originally to Tennard, and sought to hold him and his estate liable for the debt in the first instance.

The phrase " on time " in the letter, taken in connection with the context, clearly shows that it was contemplated and intended that a credit should be given to Tennard. The credit was given to him accordingly, upon the guaranty contained in the letter of the defendant; and it is not for the plaintiff now to say, after having treated the undertaking of the defendant throughout as that of a guarantor, and no more, that his liability is that of a principal debtor. The question in every case of this class is, to whom did the guarantee originally look for the primary fulfilment of the engagement? If the whole credit be not given to the person who comes in to answer for another, his undertaking is collateral, and his liability that only of a guarantor. [4 Kent, 123; Story on Contracts, sec. 861; 1 McCord, 100.]

The intention and understanding of the parties is the criterion in every case by which to ascertain the character of the contract and the extent of the liability. [Story on Con. secs. 858, 866, 867; 12 Wheat. R. 515; 7 Peters, 113; 2 Howard (U. S.), 426; 10 Peters, 482; 12 Pick. 133; 10 Johns. R. 180.]

In the present case, it is, we think, manifest that the terms of the contract import a guaranty, and nothing more; and that it was intended to be so understood and treated by both the parties between whom it is now sought to be made effectual.

To arrive at the correct interpretation of the contract, and its proper application in respect to the parties, it has become necessary to determine what must be considered the proper direction and address of the letter in question. It appears that the

plaintiff and Pilgrim, whose name is included in the address upon the face of the letter, had been partners in trade until a short time (perhaps but the day previous) to the date of the letter; but that previous to the day of its date the partnership had been determined. The letter on the outside was directed to *Smith* alone; but on its face it was addressed to *Smith and Pilgrim.* The letter was delivered to Smith, who thereupon furnished to Tennard the goods; and, upon his failure to pay for them, instituted this action to recover of the defendant their value to the amount of the guaranty.

Upon consideration, we are all of opinion that we must look to the address upon the face of the letter, and not to the direction upon the back of it, to ascertain the party to whom its application and promise were intended, by the writer, to have been made; that, bearing upon its face a direction and address full and complete, and free from ambiguity, we must take that as the certain criterion to determine its application, without regard to the discrepancy in the superscription. If the letter did not bear upon its face the proper address, resort might be had to the superscription, or perhaps to other extrinsic evidence, if necessary, to determine its direction and application. [1 Howard, 169.] But when the contract upon its face is complete and perfect, and certain to every intent, as well in respect to the parties as the subject matter, we do not think it admissible to resort to anything extrinsic to control the express terms and clear import of the face of the instrument. [See Allison *vs.* Rutledge, 5 Yerg. 193.]

What may have been the motive in giving the letter an exterior direction different from the address adopted upon its face, we cannot undertake to determine, nor is it material to inquire. It may have been that the defendant was upon terms more confidential with Smith than with Pilgrim; and that he desired that the letter should be first seen and considered by the former; or it may have been the result of mere inadvertence. The face of the letter must have been regarded as most material, as containing the essential contract; and to its preparation a sufficient degree of care seems to have been devoted.

The address to "*Smith and Pilgrim*," with the introductory word "*gentlemen*" in the plural number upon the face of the letter, is free from ambiguity, requires no extrinsic aid or explanation, and admits of no doubt as to the party addressed, and with whom the defendant intended to contract. Taking, then, the face of the instrument as the evidence of the contract, can the present action be maintained?

The case of Myers *et al. vs.* Edge [7 Durnf. & East, 254], is very nearly in point. The defendant, Edge, gave a letter of credit in favor of one Duxbury, addressed to Myers, Fielding, Ainsworth & Co. At the date of the letter Ainsworth was a partner in the same commercial house with the plaintiffs. Before the goods in question were furnished he withdrew from the firm. Duxbury having failed to pay, the plaintiffs demanded payment of the defendant, who said it should be settled, and requested time; but afterwards refusing to pay, suit was brought by the plaintiffs, Myers and three others, who then constituted the firm.

It was objected on the part of the defendant, that the action could not be maintained by the present plaintiffs, because Ainsworth, with whom also the contract was made, was not joined with them, and was not a partner at the time when the goods were furnished. Other objections were taken, but this was maintained, and to it the opinion of the court was confined. Rooke, Justice, overruled the objection, and there was a verdict for the plaintiffs. A rule was granted, calling on the plaintiffs to show cause why the verdict should not be set aside and a non-suit entered, or a new trial granted. Upon argument in the King's Bench, the rule was made absolute; it being the unanimous opinion of the court that the objection was well taken. "We are to judge," said Lord Kenyon, "on the contract that the parties have made, and ought not to substitute another in lieu of it. Here the defendant contracted with Myers, Fielding, Ainsworth & Co. Perhaps the defendant, when he entered into this contract, had great confidence in Ainsworth, and thought that he would use due diligence in enforcing payment of the goods from Duxbury, regularly, as

they were furnished; at least, it is too much for us to say that, after Ainsworth ceased to be a partner, the defendant would have given the same credit to the remaining partners." "We cannot say that a contract, that on the face of it imports to have been made with five, ought to be construed to be a contract made with four persons only." And the other judges also declared it to be their opinion, that, if the plaintiffs had intended to furnish goods to Duxbury after the alteration in the partnership, they should have required a new undertaking.

This seems to have been the leading case upon this subject. It was cited with approbation and relied on as an authority by the supreme court of New York in the case of Walsh *vs.* Bailie [10 Johns. R. 180]. And the principle of the decision was again recognized and affirmed by the same court in the subsequent case of Penoyer *vs.* Watson [16 Johns. R. 100].

The same principle was asserted by the supreme court of Ohio in Taylor *vs.* Wetmore [10 Ohio R. 490]; by the supreme court of Tennessee in Allison *vs.* Rutledge [5 Yerger, 193], and in several other cases which have been cited on behalf of the defendant.

But the case which may perhaps be considered the most nearly in point, and which seems entitled to the greatest weight as authority, and most strongly to support the conclusion to which we have arrived in the present case, is the case of Grant *vs.* Naylor, determined in the supreme court of the United States [4 Cranch, 224; 2d Cond. R. 95]. The case was as follows: John and *Jeremiah* Naylor brought suit in the circuit court for the district of Maryland, to recover the value of goods furnished to A. Grant, on the alleged guaranty of the defendant, D. Grant. In support of their claim, the plaintiffs read in evidence a letter addressed by the defendant to John and *Joseph* Naylor. The circuit court instructed the jury that the evidence was sufficient in law to support the action. But on error, the supreme court reversed the judgment of the circuit court, and decided that the letter of guaranty addressed by mistake to John and *Joseph* Naylor, and delivered to John and *Jeremiah* Naylor, would not support an action by John and

Jeremiah for the goods furnished by them to the bearer, upon the faith of the letter.

In delivering the opinion of the court, Chief Justice MAR-SHALL said: "That the letter was really designed for John and Jeremiah Naylor cannot be doubted. But the principles which require that a promise to pay the debt of another shall be in writing, and which will not permit a written contract to be explained by parol testimony, originate in a general and wise policy, which this court cannot relax so far as to except from its operations cases within the principles." "This is not a case of ambiguity. It is not an ambiguity patent, for the face of the letter can excite no doubt. It is not a latent ambiguity; for there are not two firms of the name of John and Joseph Naylor & Co., to either of which this letter might have been delivered.

"If it be a case of mistake, it is a mistake of the writer only; not of him by whom the goods were advanced, and who claims the benefit of the promise."

In conclusion, the chief justice says: "In such a case, the letter itself is not a written contract between Daniel Grant, the writer, and John and Jeremiah Naylor, the persons to whom it was delivered. To admit parol proof to make it such a contract, is going further than courts have ever gone, when the writing is itself the contract (not evidence of a contract), and where no pre-existing obligation bound the party to enter into it."

The applicability of this reasoning of the chief justice to the facts of the case under consideration is too obvious to require comment; and it is decisive of the question involved in the present inquiry.

The plaintiff seems to have framed his petition with the view of introducing parol evidence to control the address of the letter to Smith and Pilgrim, on the ground that this was a mistake. But if it was a mistake, as remarked by the chief justice, in the case just cited, it was a mistake of the writer only, and not of Smith, to whom it was delivered, and who seeks to charge the defendant on account of his undertaking contained in the

letter. If it was a mistake of Montgomery, Smith, to whom the letter was delivered, was not imposed upon with respect to the address; but knowing that the undertaking was not applicable to him, but that it contained an application and promise to a company not then existing at that place, he trusted the bearer, who came to make contracts, on his own account. This is not a case in which the party is entitled to relief on the ground of mistake, if it be conceded that a mistake in the address did in fact exist. But it is most probable that the writer, in this case, adopted the address which he intended, and in that respect committed no mistake. The partnership had been so recently dissolved that he, living, as it appears, at a distance, may not have been aware of its dissolution; and hence addressed a mercantile house which recently had been, but which, at the date of his letter, was not in existence. There was, therefore, a defect of parties to the contract, there being no firm in existence of the description of that designated by the address, to which the benefit of the guaranty could enure. If, as was said in the case before cited, of Myers vs. Edge, the plaintiff intended to furnish the goods to Tennard, he should first have applied to the defendant to renew his undertaking to himself personally.

"It is the duty of the individual," said Chief Justice MARSHALL, in Russell vs. Clark [2 Pet. Cond. 423], "who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions; but to require an explicit and plain declaration of the obligation he is about to assume."

It is a well settled rule, applicable to this class of cases, that the liability of a guarantor or surety cannot be extended by implication, or otherwise, beyond the actual terms of his engagement. It does not matter that a proposed alteration would even be for his benefit; for he has a right to stand upon the very terms of his agreement. The case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable. In the language of Lord ELLENBOROUGH, in Bacon vs. Chesney, the claim

14

as against a surety is *strictissimi juris;* and it is incumbent on the plaintiff to show that the terms of the guaranty have been strictly complied with. [Stark. N. P. R. 192.] On this subject the cases speak a uniform language. [9 Wheaton, 680; 2 Penn. 27; 6 Gill & Johns. 243; 10 Johns. 587; id. 180, 312; 8 Wend. 512; 8 Bing. 156.]

The several authorities to which our attention has been directed, in argument, upon the question of the right of the plaintiff to maintain this action, and which are in point, seem uniformly to deny the right, and to support the doctrine contended for on behalf of the defendant, that the action cannot be maintained. In the searching examination which appears to have been given to the subject by counsel for the plaintiff, no case, or even dictum, has been found to the contrary.

As it seems clear, upon authority, that the plaintiff in this case cannot maintain his action, it becomes unnecessary to consider the other questions presented in argument.

It is the opinion of the court that the judgment be affirmed.