## ROUSS v. KING.

1. GUARANTOR—SURETY.—Under terms of contract here sued on defendant was surety and not guarantor, and the fact that creditor extended to debtor credit in excess of amount stipulated in contract and extended time of payment of balance, does not release surety. Nor is the surety discharged by reason of the fact that credit was extended to debtor after removal of his business to Columbia, the contract provided that the goods were to be sold to K., of Bishopville, which latter words are mere *descriptio personae.*

2. A SURETY has no right to require the creditor to accept additional security of the debtor, and creditor does not discharge surety by declining to accept security offered, whether his reasons be sound or not.

Before J. H. HUDSON, special Judge, Richland, March, 1903. Reversed.

Action by Chas. Broadway Rouss against J. B. King and R. B. King. From order of nonsuit, plaintiff appeals.

*Mr. J. S. Muller,* for appellant, cites: *Respondent is surety:* 14 Ency., 2 ed., 1128, 1130; 24 Ency., 716-7; Brandt on Sur., sec. 1; 32 Ind., 11; 4 Ind., 264; Stearns on Sur., sec. 6; 1 McM., 76. *Contract does not limit credit to be extended:* 22 S. C., 285; 24 Ill., 20; 62 Wis., 526; 5 G. & J.,

314; 6 Dak., 35; 14 Neb., 158; 19 South, 765; 18 Minn., 470; 51 N. Y. S., 205; 79 N. W., 120; Stearns Law of Sur., secs. 59, 77; 145 Ill., 488; 86 Tex., 690; 16 Ohio Cir. Ct. R., 287; 18 N. Y., 502; 57 S. W., 903. *Describing debtor as "of Bishopville," is only descriptio personae:* 85 Ill., 164; 37 S. C., 145; 100 Ill. App., 171. *Creditor not required to accept additional security of debtor:* Stearns Law of Sur., sec. 98; Brandt on Sur., secs. 370, 506; Jones on Pledges, sec. 514; 59 Ark., 92. *As to construction of the contract:* Brandt on Sur., secs. 78, 79, 80; 63 N. Y., 383; 7 Pet., 122; 62 Neb., 888; 108 Ga., 14; 97 Ill. App., 283; 58 P., 164; 17 S. C., 1; 12 East., 227; 2 How., 449.

*Mr. D. W. Robinson,* contra, cites: *Any alteration or change of contract without assent of surety or guarantor discharges him:* 21 L. R. A., 415; 51 S. C., 124; 23 S. C., 592; 5 Pet., 536; 9 Wheat., 703; Stearns on Sur., sec. 72; 22 S. C., 288; 17 S. C., 1; Brandt on Sur., 2 ed., sec. 93; 14 Ency., 2 ed., 1162; 4 L. R. A., 243. *Surrender or loss of collateral inures to benefit of surety:* 14 Ency., 1167; Brandt on Sur., 428, 429, 440; 26 S. C., 612; 56 S. C., 575; Brandt on Sur., 2 ed., sec. 378; 51 S. C., 126; 10 S. C., 244. *Credit in excess of guaranty discharges guarantor:* 14 Ency., 1163; Brandt on Sur., sec. 771; 42 At., 840. *Is defendant guarantor or surety?* Brandt on Sur.; 2 ed., sec. 1; 14 Ency., 2 ed., 1130; Stearns on Sur., sec. 6; 4 D. & B., 144; Smith on Mer. Law, 562; 28 S. C., 510; 21 S. C., 401. *As to construction of contract:* Chitty on Con., sec. 84; 6 S. C., 355; 16 S. C., 270; 15 Mo., 202; 11 Wend., 66; Stearns on Sur., sec. 96; 27 S. E. R., 709; 31 Vt., 702.

May 11, 1904. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action was brought by Charles B. Rouss, a wholesale merchant, against J. B. King and R. B. King, for a balance of $1,500 and interest, due by J. B. King, a retail merchant, which it is alleged in the com-

plaint, R. B. King, by his written contracts, agreed to pay before the credit was extended. As the decision of the questions involved in the appeal depend entirely on the construction of the notes and contracts, it is necessary to set them out in full.

"$500.00. September 12, 1897.

"On demand, for value received, we jointly and severally promise to pay to the order of Charles Broadway Rouss, of New York City, the sum of five hundred dollars.

"It is understood and agreed that this note is given to and shall be held by the said Rouss as collateral security for the payment of the indebtedness represented by the open account for goods and merchandise delivered by him at any time to J. B. King, of Bishopville, S. C., and by any notes, bills, etc., given therefor; and the drawers, indorsers and sureties on this note severally waive demand, notice and protest and the benefit of all exemption laws of every description, including homestead, as against any liability arising hereunder.

"Signature.    J. B. King.    R. B. King."

"Whereas, Charles Broadway Rouss, upon the security of this agreement and note has extended, or is about to extend to J. B. King a credit in merchandise to the amount of five hundred dollars, for which he has, or they have, promised and agreed to remit, weeekly, at the rate of ten per cent. per week, of the open account of indebtedness, whatever it may be.

"And said Rouss, upon said security has also extended to said J. B. King the privilege of ordering an equal amount of goods to the remittance sent, thus granting a continuous credit running collaterally and equally with the remittance.

"Therefore, to secure said Rouss in the payment of the above mentioned indebtedness, the undersigned have become joint and several makers and sureties hereon.

"In the event of a failure to comply with the above promise and agreement, and should said weekly payments remain unpaid for as much as four weeks, then the said Rouss is hereby authorized to proceed with the collection of this note,

and should it become necessary to institute legal proceedings to enforce the payment hereof, we promise and agree to pay all costs of suit and a reasonable attorney's fee in the premises. But it is distinctly understood and agreed that nothing in this instrument shall be construed as binding said Rouss to extend or to continue said line of credit; on the contrary he shall have the right at all times to decline and refuse further credit or delivery of merchandise, and to demand additional security, as in his judgment he deems it expedient or necessary.

"The sureties hereon waive notice of the acceptance of this guarantee, and of any credit extended on the faith thereof, and consent that the said Rouss may, in his discretion, grant extensions of time to the principal debtor without notice to the sureties. The word 'sureties' shall apply to a single surety if there be but one, and the paper shall be binding upon the surety or sureties who have signed at the time of the receipt thereof by the said Rouss, without respect to any intention or expectation that any other surety should sign.            Signature.    J. B. King.    R. B. King."

The second note and contract sued on is in precisely the same terms, except the date, which is August 5, 1898, and the amount of the credit, which is $1,000.

Upon the close of the plaintiff's testimony, the Circuit Judge granted a nonsuit as to R. B. King on the following grounds:

"1. It appears that the principal creditor extended to the principal debtor credit far in excess of the amount guaranteed, and that said principal creditor has received payments applicable to the guaranteed debt far in excess of an amount sufficient to pay off and discharge the guaranty.

"2. It appears that the plaintiff has extended credit to the principal debtor in excess of the amount stipulated in the contract of guaranty, and this without the knowledge, consent and approval of the guarantor.

"4. The said principal creditor received payments from the principal debtor after his removal to Columbia, more than

sufficient to pay off and discharge any and all amounts which were due from said debtor to said creditor at the time of his removal to Columbia."

In considering the appeal from this order, it is only necessary to decide whether the defendant, R. B. King, is discharged from liability by reason of the course of the account between Rouss and J. B. King, the principal debtor. By the terms of the contract R. B. King became surety and not guarantor. "A surety undertakes to pay the debt of another. A guarantor undertakes to pay if the principal debtor does not or cannot. A surety joins in the contract of the principal and becomes an original party with the principal. The guarantor does not join in the contract of his principal, but engages in an independent undertaking. A surety promises to do the same thing the principal undertakes; the guarantor promises that the principal will perform his agreement, and if he does not, then he will do it for him." Stearns on Suretyship, section 6.

The following is a summary of the account between Rouss and J. B. King:

|  | Dr. | Cr. |
|---|---|---|
| "September 12, 1897 | $ 391 23 | $ 85 00 |
| August 5, 1898 | 2,537 70 | 2,001 08 |
| September 5, 1898 | 5,910 72 | 2,055 05 |
| October 5, 1898 | 6,204 40 | 2,925 05 |
| November 5, 1898 | 7,722 88 | 4,355 05 |
| December 5, 1898 | 8,235 23 | 5,200 05" |

From this summary it appears that Rouss extended credit to J. B. King far beyond the $1,500 secured by the two written contracts, and received payments aggregating much more than $1,500; and the Circuit Judge held that the surety was thereby discharged.

That the notes and contracts were given to secure a line of credit of $1,500 whenever the balance of debits and credits might be struck, and not simply the first $1,500 advanced, is obvious from the language used. In the notes the makers say: "This note is given to and shall be held by the said

Rouss as collateral security for the payment of the indebtedness represented by the open account for goods and merchandise delivered by him at any time to J. B. King, of Bishopville, S. C., and by any notes, bills, etc., given therefor." In the contracts it is provided: "And said Rouss, upon said security has also extended to said J. B. King the privilege of ordering an equal amount of goods to the remittance sent, thus granting *a continuous credit* running collaterally and equally with the remittance. * * * But it is distinctly understood and agreed that nothing in this instrument shall be construed as binding said Rouss to extend or to continue said *line of credit.*"

The fact that the credits exceeded the first $1,500 advanced under the notes and contracts did not discharge the liability of R. B. King as surety. The case is much stronger than *Pelzer, Rogers & Co.* v. *Steadman,* 22 S. C., 279; for there the surety was held liable for the balance when the credits exceeded her obligation, and when there were no such words in her contract as we find in this, indicating an intention to secure the balance of a current account and not one advancement of the amount specified in the contract. It is true, by the contracts the parties "agreed to remit at the rate of ten per cent. per week of the open account of indebtedness, whatever it may be;" but there is no evidence that remittances were actually made on the secured portion of the debt, and Rouss was in terms authorized "in his discretion to grant extensions of time to the principal debtor without notice to the sureties." This implied that Rouss could extend the time for the payment of the secured debt and apply any payments to other debts in the absence of express direction to the contrary. This he could do even if the contract had been silent as to extensions. *Bell* v. *Bell,* 20 S. C., 34. We think, therefore, that the nonsuit cannot be sustained on the first or fourth grounds.

The nonsuit was based on the further ground that Rouss extended a much larger line of credit to the principal debtor than the contract contemplated, and that the surety was re-

leased by this variation. We are unable to find a word in the contracts or notes indicating that Rouss and J. B. King should not deal as seller and purchaser beyond the amounts secured by these instruments. A surety is discharged by any material change in the contract, but obviously not by other dealings between the creditor and the principal debtor, even though such dealings are in the same line of business as that to which his contract relates. Cases may be found where sureties were held released because the creditor advanced a larger sum than that stated in the contract, but these rest on the controlling fact that the contract expressly prohibited a larger advance. On this point the case of *Pelzer, Rogers & Co.* v. *Steadman* is conclusive. *Douglass* v. *Reynolds,* 7 Peters, 115, seems equally strong. There the obligation was in these words:

"Our friend, Mr. Chester Haring, to assist him in business, may require your aid from time to time, either by acceptance or indorsement of his paper, or advances in cash; in order to save you from harm by so doing, we do hereby bind ourselves, severally and jointly, to be responsible to you at any time, for a sum not exceeding eight thousand dollars, should the said Chester Haring fail to do so."

Advances were made very far beyond $8,000, and the payments aggregated much more than that sum. The aggregate indebtedness at the close of the account was $22,573.23. The guarantors were held liable for $8,000 of this amount.

The defendant, R. B. King, submits, however, that the third and fifth grounds upon which the motion for nonsuit was made and which were overruled by the Circuit Judge, should have been sustained. The third ground, in brief, is that the surety was discharged by the fact that Rouss, without notice to him, continued to advance to the principal debtor after he removed his business from Bishopville to Columbia, for the reason that the contracts provided the goods were to be sold to "J. B. King, of Bishopville." These words were merely *descriptio personae,* and it would be a manifest extension and distortion of language to hold that

they implied the business between the parties was to be confined to the sale of goods to be sold from a store at Bishopville.

It remains to consider whether the Circuit Judge was in error in not sustaining the fifth ground upon which the motion for nonsuit was based. This ground was as follows:

"It appears from the evidence that the principal creditor required the debtor to surrender and release certain insurance policies, and himself released a policy, which were taken for security of said principal creditor, which policies were more than sufficient to have paid the amount guaranteed by R. B. King, and this surrender and release was made without the knowledge, consent or approval of the guarantor."

It appears that J. B. King, the principal debtor, sent to Rouss two policies of insurance on his stock of goods, which the answer alleges were to be held by him as collateral to the notes and contracts sued on and any indebtedness of J. B. King to Rouss. Rouss returned them for the reason, as witnesses for the plaintiff say, that they contained provisions which Rouss knew J. B. King could not comply with. Rouss then took out two policies in New York, in different companies, for $1,500 each. One of the companies afterwards became insolvent; upon which Rouss wrote J. B. King it would be advisable to cancel its policy and take out other insurance. J. B. King answered that he could not afford to pay the premium, and for this reason no other insurance was taken. Afterwards a fire occurred.

It is too clear for argument that a surety has no right to require a creditor to accept additional security. If he wishes protection, he must seek it for himself. Therefore, R. B. King's obligation was not affected by the refusal of Rouss to accept the insurance policies, and it is quite immaterial whether his reason for refusing to receive them was sound or not.

The policy surrendered by Rouss had become valueless

without fault on his part and its surrender could not affect the release of the surety.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the cause remanded for trial.