JOHN H. LYON & COMPANY, A CORPORATION, DEFENDANT IN ERROR, v. MATTHIAS PLUM, PLAINTIFF IN ERROR.

Submitted December 10, 1907—Decided March 2, 1908.

A guaranty to a firm of a customer's running account is not operative as to credit extended after the admission into such firm of a new member, in the absence of anything to show that such change in the firm was originally contemplated by the guarantor.

On error to the Supreme Court.

For the plaintiff in error, *Coult, Whiting & Smith.*

For the defendant in error, *Harry N. Reeves.*

The opinion of the court was delivered by

PARKER, J. At the foot of an order for merchandise, dated October 3d, 1895, signed by George W. Downs and addressed to Messrs. J. H. Lyon & Company, was appended the following guaranty, signed by the defendant:

"*Mess. J. H. Lyon & Co.:*

"GENTS—I hereby agree to become responsible for the purchases made by G. W. Downs for his Newark Mill.

"MATTHIAS PLUM."

At the date of the guaranty J. H. Lyon & Company were a partnership consisting of John H. Lyon and Philip M. Knight. This partnership sold goods to Downs on running account until January 1st, 1898, when the amount due was $1,012.97. On that date Joseph C. Tully was admitted into the partnership, which continued with these three members until February, 1905, when it was incorporated as John H. Lyon & Company, the present plaintiff. Both the second partnership and the corporation continued the Downs account until June, 1903, when Downs, then owing a balance of $1,620.36

on the account and notes for goods purchased, was declared a bankrupt. Suit was brought by the corporation of Lyon & Company against Plum on his guaranty, the bills of particulars annexed to the declaration setting forth all the items of the Downs account from the beginning, and at the trial in the Essex Circuit, the above facts appearing on the plaintiff's case, motion was made to nonsuit on several grounds, among them that the guaranty was not a continuing one; that it had been discharged by the acceptance of notes by Lyon & Company, thereby extending the time of payment, and that the guaranty ceased to be operative on January 1st, 1898, the date of Mr. Tully's admission into the firm, since which time the statute of limitations, which was duly pleaded, had run. This motion was denied, and defendant having rested his case without offering any evidence, the jury, by direction of the court, returned a verdict in favor of plaintiff for the full amount claimed and interest. On exceptions to the refusal to nonsuit duly taken, and the refusal being assigned for error, the grounds then urged are now before us.

Regarding the guaranty as a continuing one, and the guarantor's liability as not discharged by the acceptance of notes, we think the trial judge, nevertheless, erred in refusing to nonsuit, as the case is, in our opinion, controlled by the third ground of nonsuit presented to the trial court. On this point the rule, as stated in 12 *E. R. C.* 469, is as follows: "A document in terms a continuing guaranty, given to two or more persons constituting a body fluctuating as to numbers, will in general continue in force only so long as the body remains unchanged." And in 20 *Cyc.* 1431, the rule, as stated in the text, is that if the guaranty is directed to a firm, a change in the partnership terminates the offer, and advances made by the new firm are not secured by it.

An examination of the decisions shows that they fully support the rule. In the case of *Wright* v. *Russell*, 3 *Wils.* 530, a bond given for fidelity of a clerk to his then employer was held not to apply to his subsequent service in a partnership formed of the original employer and one associated with him.

The case of Barclay *v.* Lucas, noted in the report of *Barker*

v. *Parker,* 1 *T. R.* 291, is the only one we find to the contrary.
In that case the bond was for the faithful service of one
Philip Jones in the shop and counting-house of the three
plaintiffs, who afterwards took another partner, subsequent
to whose admission the default occurred, and plaintiffs sued
for only three-quarters of the amount in default, as their
share secured to them. The judges, Lord Mansfield presid-
ing, held plaintiffs entitled to recover, construing the bond
in the light of their knowledge that banking and commercial
houses were notoriously fluctuating in membership, and that
the bond was intended to secure "the house" as a variable
quantity, and arguing *ab inconvenienti* that under a contrary
decision business houses would have to take new security with
each change of partners, as, indeed, they would. Subse-
quently, however, Lord Mansfield himself declared in *Weston*
v. *Barton,* 4 *Taunt.* 673, that Barclay *v.* Lucas must be taken
as overruled, and in *Spiers* v. *Houston,* 4 *Bligh* (*N. S.*) 515,
it was held in the House of Lords that a guaranty of moneys
advanced by a firm consisting of two persons will not extend
to a new firm in which a third person is introduced as a
partner, and that payments made by the principal, after the
alteration of the firm and in transactions with him, are appli-
cable to the extinction of the balance due the old firm at the
date of the alteration, a rule applicable, as will be seen, to the
present case.

The rule as to changes in the firm secured is not confined
to increase in a partnership by admission of a new partner,
but extends to a decrease by voluntary act or by death, and
to incorporation of the partnership, the general proposition
being that transactions occurring after any material change
in the *status* or composition of the party originally guaran-
teed will not be covered by the guaranty. *De Coly. Guar.*
(*Eng. ed.*) 250, 265; *Strange* v. *Lee,* 3 *East* 484; *Dry* v.
*Davy,* 10 *Adolph. & E.* 30. The American cases are to the
same effect. *Penoyer* v. *Watson,* 16 *Johns.* 100; *Barnett* v.
*Smith,* 17 *Ill.* 565; *Holmes* v. *Small,* 157 *Mass.* 221; *State*
v. *Boon,* 44 *Mo.* 254; *Smith* v. *Montgomery,* 3 *Tex.* 199.
The rule was applied in this state to the case of a mortgage

security, in *Forst* v. *Kirkpatrick,* 19 *Dick. Ch. Rep.* 578, and seems to us to be founded on reason and policy. Plum, the defendant, presumably knew both Lyon and Knight, of the original firm, and had a right to rely on their care in extending credit and promptness in collection. He could not be expected to know what part a new partner might play in the business of the firm. Such new partner might be entrusted with the entire management of credits and collections, and might negligently extend undue credit and delay collection. Plum guaranteed the original firm and that alone. His liability is measured by the terms of his contract which is *strictissimi juris,* and not to be extended by implication. *Manufacturers' Bank* v. *Dickerson,* 12 *Vroom* 448. And the addition of a partner to the firm of Lyon & Company was an additional risk which Plum did not assume.

Plum's liability, therefore, did not extend to credits given by the new firm of Lyon & Company after Tully's admission into it. And under the doctrine of *Spiers* v. *Houston, supra,* payments made by the debtor after the change of membership, are applicable to the earlier items of the account. Such payments, in the present case, were sufficient to extinguish those items, which, moreover, are barred by the statute of limitations. There was, therefore, no remaining liability on the guaranty, and the trial judge should have ordered a nonsuit.

The judgment will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, BOGERT, VROOM, GREEN, GRAY, DILL, J.J.    13.