FRIEDMAN–SHELBY SHOE CO. v. DAVIDSON. (No. 1015.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 15, 1916. Rehearing Denied Dec. 6, 1916.)

1. GUARANTY ⚖═36(1)—LIABILITY—ALTERATION.

The liability of a guarantor cannot be extended by implication, or otherwise, beyond the actual terms of his contract, even though a proposed alteration would be for his benefit, and a case must be brought strictly within the terms of the guaranty, reasonably interpreted, to make the guarantor liable.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 38, 40; Dec. Dig. ⚖═36(1).]

2. GUARANTY ⚖═36(5) — CONSTRUCTION — ALTERATION.

Under a guaranty of credit for "E. E. Peoples Company, Memphis, Texas and Clovis, N. M.," unconditionally guaranteeing whatever amount "said party" should owe, the guarantor was not liable after such party gave up business at those places and engaged in business elsewhere in Texas, as the contract could not be construed as securing the plaintiff wherever the company should transfer its business, as the term, "said party," did not refer to Peoples personally, though he was individually doing business under the company name, and as the words "Memphis, Texas and Clovis, N. M.," were not descriptio personæ.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 41; Dec. Dig. ⚖═36(5).]

3. GUARANTY ⚖═27—CONSTRUCTION—INTENTION.

The intention of the parties will be sought from the instrument, but to that end the circumstances at the time of its execution will be considered.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 28; Dec. Dig. ⚖═27.]

4. PAYMENT ⚖═46(2)—RUNNING ACCOUNT — APPLICATION.

Where there is a running open account between parties and no application is made by either, the law will apply the payment according to priority of time, which rule applies where one item is better secured than the other.

[Ed. Note.—For other cases, see Payment, Cent. Dig. § 126; Dec. Dig. ⚖═46(2).]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by the Friedman-Shelby Shoe Company against Alex Davidson. Judgment for defendant, and plaintiff appeals. Affirmed.

W. E. Gee and Jas. N. Browning, both of Amarillo, for appellant. Kimbrough, Underwood & Jackson, of Amarillo, for appellee.

---

⚖═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HUFF, C. J. This was an action, brought by the appellant, through its representative, against the appellee, Davidson, on the following guaranty contract:

"Friedman-Shelby Shoe Company, St. Louis, Mo.—Gentlemen: In compliance with your request for a guaranty of the tenor following to establish with you credit for E. E. Peoples Co., Memphis, Texas and Clovis, N. M., and in consideration of one dollar to us in hand paid by you, the receipt of which is hereby acknowledged, I hereby unconditionally guarantee payment of whatever amount said party shall at any time be owing you, whether heretofore or hereafter contracted, including interest at the rate of ——— per cent. on any balance or balance of account or note; this guaranty is to take effect without notice of its acceptance (which is hereby waived); and it is to be an open guaranty and continue in full force and effect, notwithstanding any renewals or extensions granted by you without obtaining my previous consent thereto, and until expressly revoked by notice to that effect in writing from me to you, and said revocation is in no wise to affect my responsibility in the premises for any liability contracted. Notification of purchase and maturity of bills and of any default is hereby waived but my liability hereunder is not to exceed the sum of three thousand dollars at any one time.

"It is mutually understood that this guaranty is to bind the party (or parties) who sign it, whether the same be signed by any other party (or parties) or not.

"Dated this the 7th day of March, A. D., 1911, at St. Louis, state of Missouri.

"[Signed] Alex Davidson.
"Witness: A. Friedman."

The appellant was a corporation, and under the laws of Missouri was dissolved, and its president, as trustee, brought the suit, alleging substantially the transfer of all the properties, assets, and obligations to the International Shoe Company. The allegations are to the effect that the E. E. Peoples Company was engaged in business, and gave the contract of guaranty to the amount of $3,000, and that upon the faith of this guaranty the appellant company sold to the Peoples Company goods to the amount of about $3,000, on the faith of the guaranty contract. The appellee alleged substantially among other things, that at the time the contract of guaranty was executed and guaranteed, E. E. Peoples was doing business as E. E. Peoples Company, at Memphis, Tex., and Clovis, N. M., that about a year thereafter Peoples opened stores at Electra and Amarillo, Tex., and that it was not intended by either appellant or appellees that such contract of guaranty would extend to the purchase made on behalf of any other stores than those then in operation at Memphis and Clovis, and that by the terms of the guaranty contract no obligations of the said Peoples were guaranteed other than such as were contracted in connection with the operation of the two stores at Memphis, Tex., and Clovis, N. M., then owned by him.

The facts in this case show that at the time the guaranty contract was executed by the appellee the E. E. Peoples Company was engaged in business and running stores in the towns of Memphis, Tex., and Clovis,

N. M.; that about a year after that time E. E. Peoples Company opened up a store at Amarillo and Electra, Tex., and abandoned their business at the two former places; that all the goods or accounts for the Memphis store were paid in full, and there remained due by the Clovis store about $250, which amount was transferred to the Amarillo account, and carried on that account. The facts also show that there was a considerable sum paid on this account before Peoples went into bankruptcy. The facts also show that E. E. Peoples was operating under the trade-name of E. E. Peoples Company, and that he alone composed the company; that at the time of executing the contract of guaranty, only the two stores, at Memphis and Clovis, were in operation. On May 7, 1912, the appellant, through its president, wrote to Davidson that:

"Inasmuch as E. E. Peoples Company are now located in Amarillo and Electra, in addition to their old towns, I kindly ask that you sign the inclosed blank. The Peoples Company now owes us about $3,500.00 or more and I suggest that you make the amount to be guaranteed for $4,000.00. Peoples has been a little slow but with weather conditions being settled I am confident his business will show such results as will enable him to catch up with his payments."

The contract inclosed with the letter for Davidson to sign was in part:

"Gentlemen: In compliance with your request for the guaranty of the tenor following to establish with you credit for E. E. Peoples Company of Amarillo, Memphis, Electra, all of Texas, Clovis, N. M. and any other store they may open and in consideration of the sum of one dollar to us in hand paid by you," etc.

—following the terms of the former contract except that the amount is left blank. Mr. Davidson refused to sign this contract of indemnity and on June 6, 1912, they wrote again as follows:

"Some time ago Mr. Abe Friedman wrote you and sent another guaranty for you to sign for Peoples but he has not heard from you regarding same. Since he wrote you Mr. Peoples paid $400.00 on May 9th, and $350.00 on June 6th. Now, Alex, why don't you sign that guaranty and return it to Abe," etc.

Davidson did not respond to this letter, and still declined to sign the new contract. On the 15th of May, 1912, Davidson wrote:

"I have your letter of May 7th and note what you say referring to Mr. Peoples' scattering show business. I have had a letter from F. M. Hoyt Shoe Company and inclose you their letter and my copy. Although I admit I have given a pretty strong letter on Mr. Peoples, but this is my opinion at this present writing. I will not guarantee any bills for him or any one else. The guaranty I gave Friedman-Shelby Shoe Company is on account of the good friendship I have for Mr. Longley and Mr. Friedman."

He further says in his letter:

"I have to-day written Mr. Peoples and told him he ought and should not buy any shoes outside of the Friedman-Shelby Shoe Company and I believe he will follow my instructions."

He also notified them that later he asked Peoples to advise him how he stood with Friedman-Shelby before signing another guaranty:

"I wish to have all data before me. Mr. Peoples will abandon the Clovis store and I am after him to confine all of it in one store, and the amount he owes you people is entirely too much. He must by all means arrange to reduce it and I have so advised him to-day. Just as soon as I have a letter from him I will let you hear from me again," etc.

[1] Appellant assigns error to the action of the court in refusing to sustain exception to that portion of the answer set out above, and also assigns error to the action of the court in giving a peremptory instruction for the appellee, Davidson. The liability of a guarantor—

"cannot be extended by implication, or otherwise, beyond the actual terms of his engagement. It does not matter that a proposed alteration would even be for his benefit; for he has a right to stand upon the very terms of his agreement. The case must be brought strictly within the terms of the guaranty, when reasonably interpreted, or the guarantor will not be liable." Smith v. Montgomery, 3 Tex. 199.

It is said in that case there was no firm in existence of the description of that designated by the address to which the benefit of the guaranty could inure.

[2, 3] If the appellant wished to furnish goods to E. E. Peoples & Co. at Amarillo, and E. E. Peoples & Co. at Electra, it should first have applied to the appellee to renew his undertaking to guarantee the sales at those places. Appellant evidently so understood, for it did apply for a new guaranty covering those places, but the appellee, Davidson, refused to sign the guaranty for those places. The facts really will warrant the inference that the parties to the obligation interpreted the contract as only covering goods sold to the company at Memphis and Clovis. We may say in this case there was no E. E. Peoples Company at Amarillo or Electra when the guaranty contract was entered into. We do not believe the language of the contract susceptible of the interpretation that appellant was secured by the contract wherever and whenever the company should transfer its business. Memphis, Tex., and Clovis, N. M., are limitations upon the credit authorized to Peoples Company. As used in the contract, they are not words descriptive, but the words limit the liability to pay. It is the business enterprise at those two places whose credit is guaranteed, and not E. E. Peoples personally whose credit is guaranteed at any and all places. Certainly he did not reside at both places at the same time. In fact, the evidence shows that he was then a resident citizen of Amarillo. He carried on business at both Clovis and Memphis, and it was the indebtedness of the business which was guaranteed; that is:

"To establish with you credit for E. E. Peoples Company, Memphis, Texas and Clovis, N. M. * * * I hereby unconditionally guarantee payment of whatever amount said party shall at any time be owing you."

The term "said party" does not refer to Peoples personally, but to Peoples Company, Memphis and Clovis. The testimony, as well as the allegations in the pleadings, shows that this was a trade-name, or the name of the business. The "unconditional guaranty" is to this party or business and not to any other party or business. It is limited as to time, but does not purport to entitle the business to credit at any other place. "Unconditional" will not authorize payment for any other party or business under which Peoples should operate, or the payment of indebtedness for any other place than those to which the contract limited the payment. The words are of contractual import, by which the extent of the appellee's obligation to pay must be measured. A guarantor may define the circumstances or conditions under which he will be liable, so that a creditor cannot hold him under other circumstances, and such creditor must show that he has complied therewith, or that the case falls within the circumstances defined by the obligation. This is illustrated by the case of Manhattan Gas Light Co. v. Ely, 39 Barb. (N. Y.) 174, where the guaranty was that the obligor would pay for gas and meter furnished to another if the latter should fail to pay therefor. The guarantor was held relieved upon the principal debtor abandoning the premises, and that he was not liable to pay for gas furnished the new occupant, even though the company had no notice of the change. A guarantor cannot be held for goods furnished a partnership of which the principal debtor is a member with one whom he has taken into the partnership subsequent to making the guaranty. Coan v. Patridge, 98 N. Y. Supp. 570. Where the name of the principal debtor is changed or he enters into a partnership, or a partnership debtor becomes a corporation and the debt becomes due by some new entity, the obligation of guaranty of the old party will not inure to the benefit of the new. Lamm v. Colcord, 22 Okl. 493, 98 Pac. 355, 19 L. R. A. (N. S.) 901; Marsh Company v. Beals, 201 Mass. 163, 87 N. E. 471; Crane v. Specht, 39 Neb. 123, 57 N. W. 1015, 42 Am. St. Rep. 562.

It is also held a guaranty to make good any loss sustained by a publisher, by intrusting books with the company as sales agent, does not cover default by the principal as to books and property intrusted by a corporation, to which the individual publisher has transferred his assets and contracts, though the contract provides the guaranty shall cover the whole period of such agency. Saunders Co. v. Ducker, 116 Md. 474, 82 Atl. 154, Ann. Cas. 1913C, 817. A guaranty that a certain firm would pay for all goods furnished them does not extend to purchases by one of the partners succeeding to the business. Bill v. Barker, 16 Gray (Mass.) 62; Parham Sewing Machine Co. v. Brock, 113 Mass. 194; White Sewing Machine Co. v. Hines, 61 Mich. 423, 28 N. W. 157. The rule appears to be generally regarded as settled that a change in a firm or corporation to which a continuing

guaranty runs terminates the same. Lyon v. Plum, 75 N. J. Law, 883, 69 Atl. 209, 14 L. R. A. (N. S.) 1231, 127 Am. St. Rep. 858, 15 Ann. Cas. 1019; and notes thereunder. Where also the principal debtor is changed or his business, the indebtedness of which is guaranteed, is abandoned, and a new enterprise is projected under different conditions, environments, or place, we believe it to be the rule that the obligation would be thereby terminated. In this case the uncontroverted facts show, at the time of entering into the contract, Peoples & Co. were engaged in the mercantile business at Memphis, Tex., and Clovis, N. M. The instrument was signed to establish with the appellant credit for Peoples Company, Memphis and Clovis. There is nothing to show that it was contemplated by the parties thereto that it was given to establish credit for the company at Amarillo and Electra; but, on the contrary, it is shown appellants requested a guaranty for those places, which was refused by appellee. The intention of the parties will be sought from the instrument, but to that end the circumstances surrounding the parties at the time of its execution will be taken into consideration. Authorities, supra. It is manifest, we think, from the instrument, as well as from the facts, Davidson did not intend to guarantee sales made to the company at Amarillo and Electra, or that appellant so regarded the instrument. The evident intent was to be confined to the sales to the business at the two places named.

The appellant cites cases to establish that the words, "Memphis, Texas and Clovis, N. Mex.," are descriptio personæ. We do not believe it to be necessary to review the Texas authorities cited, which are Gayle v. Ennis, 1 Tex. 184; Lipscomb v. Ward, 2 Tex. 277; Sass v. Hirschfield, 23 Tex. Civ. App. 396, 56 S. W. 941. The first two cases clearly show the added words after the name were descriptive of the person, and could be treated as surplusage. It did not matter whether the persons were administrator or curatrix, they had the right to sue as individuals and also to indorse the notes involved in that case. The rights involved under the contracts there in question were not affected by the indorsement. In the last case the judgment against the party, administrator, did not affect the right to have issued an execution thereon for costs against the party personally. The main reason assigned therein being that he was liable under the law for the costs personally. The case cited from South Carolina (Rouss v. King, 69 S. C. 168, 48 S. E. 220; Id., 74 S. C. 251, 54 S. E. 615), evidences the fact that in the contract of suretyship the principal obligor was described as "J. B. King, of Bishopville." The place was there clearly descriptive of J. B. King. The court, on the second appeal, in the course of its opinion, said that after the business was removed to Columbia, the

surety went to that place to look into the business, thereby recognizing his interests therein. The context in which the words used in the instant case negative a descriptive purpose, but directly point to the place where the credit is to be extended, and which would be guaranteed. There was evidently then a reason for naming these two places. The vicinity of the towns may have offered better business advantage than at some other point. The cases cited by the appellee in some measure support this view. Wheeler & Wilson v. Brown [65 Wis. 99] 25 N. W. 427, 26 N. W. 564; 14 Cyc. 1436.

The appellee also cites Bradshaw v. Barber [125 Minn. 479] 147 N. W. 650, which we believe to be in point. The contract in that case provided that in consideration of goods furnished Miss Lotti J. Barber, of Bridgewater, S. D., the guarantor should be liable therefor. Miss Barber disposed of her business at Bridgewater, and thereafter opened business in Two Harbors, where goods were sold to her by the creditor and the debt sued on accrued. The court in that case held the language of the contract, if taken literally, would render the guarantor liable. It is also said, for the purpose of ascertaining rules of construction are to be applied as in ordinary written instruments. The liability, however, is not to be extended by implication beyond the terms of his guaranty, as thus ascertained. It is also said in that case:

"He might well have been willing to guarantee her purchases while she was doing business at Bridgewater, and yet have refused to bind himself [at] another location had such been under consideration. In the nature of things such a change of location could not be made without materially affecting the risk, thus constituting a departure from the original engagement of the parties. If, therefore, the guarantor be held bound without subsequent consent, which does not here appear, it would have to be by virtue of a contract upon the terms of which the minds of the parties never met. Prima facie, a guaranty of the kind under consideration is essentially local."

The general principles announced in the above case are recognized by our courts as applied to different facts as to time, amount and other limitations. Smith v. Montgomery, 3 Tex. 199; Clark v. Cummings, 84 Tex. 610, 19 S. W. 798; Bmar v. Gahagan, 152 S. W. 689; Schaub v. Dodge, 56 S. W. 126; Wassenick v. Ireland (Sup.) 9 S. W. 203; Amarillo Grain & Coal Co. v. Knight, 150 S. W. 318; Ryan v. Morton, 65 Tex. 258; Bullard v. Norton (Sup.) 182 S. W. 668; Waggoner Banking Co. v. Gray County State Bank, 165 S. W. 922.

[4] By the fifth assignment it is urged that there was a balance due Peoples Company at Clovis, of $250, which was transferred to the Amarillo account. There were payments more than sufficient to satisfy this amount upon the joint or consolidated accounts by Peoples Company, and if it had so applied, this amount would have been

extinguished. The sum of all the accounts, less the credits, was closed by three notes of $1,000 each, and two or three smaller notes, which latter were paid off. The rule seems to be when there is a running open account between parties and no application is made by either, the law will apply the payment according to priority of time, and this rule will apply where one item is better secured than the other. The Clovis account was oldest in point of time. The Memphis account was fully paid. We believe the trial court, in directing or applying the payments first to the Clovis items, which were the first, thereby extinguishing that account by payment, ruled correctly. Phipps v. Willis, 11 Tex. Civ. App. 186, 32 S. W. 801; Shuford v. Chinski, 26 S. W. 141.

We believe the ruling of the court, in instructing a verdict and in overruling the exceptions of the appellants in this case to the answer, was correct, and the judgment will therefore be affirmed.