## MAY v. CHICAGO CRAYON CO.

(Court of Civil Appeals of Texas. El Paso. May 9, 1912. Rehearing Denied May 29, 1912.)

1. PRINCIPAL AND SURETY (§ 66*)—LIABILITY OF SURETY — CONSTRUCTION OF CONTRACT.

The liability of an accommodation surety cannot be extended beyond the strict letter of the contract.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 108–110, 112; Dec. Dig. § 66.*]

2. PRINCIPAL AND SURETY (§ 155*)—ACTIONS —SUFFICIENCY OF PETITION.

Defendant became surety on an agent's contract with plaintiff crayon company by which the agent became district manager and bound himself to solicit orders for frames and enlargement of portraits, to deliver the portraits sold, and to sell frames and collect the money therefor, and to be responsible to the company for proper accounting by his subagents for such moneys as were collected or were advanced to them in carrying on the business. *Held*, that defendant was not liable as surety unless the unpaid indebtedness arose from the sale of frames or enlargement of portraits or from money advanced to the agent for the purpose of soliciting orders for frames and portraits, so that allegations of the petition, in an action to charge defendant as surety, that the agent collected and wrongfully appropriated certain moneys which were due and belonged to plaintiff, were not sufficient, not showing a liability for moneys collected and not accounted for by the agent in connection with the sale of frames, etc., as contemplated by the contract.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 422; Dec. Dig. § 155.*]

3. PRINCIPAL AND SURETY (§ 79*)—CONSTRUCTION OF CONTRACT—LIABILITY OF SURETY.

Where a contract between a crayon company and an agent, appointing the agent as district manager, only required him to solicit orders for frames and the enlargement of portraits and collect money for the portraits and frames, making him responsible for an accounting for his subagents for money collected and money advanced to them in carrying on the business, the agent was not bound to account for money collected for the sale of wire for use on the portrait frames, so that the surety was not liable for the agent's default in accounting for such money.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 125; Dec. Dig. § 79.*]

4. APPEAL AND ERROR (§ 1010*)—PRESUMPTIONS.

In the absence of conclusions of law and fact, the judgment will be affirmed, if supported by any phase of the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3979–3982; Dec. Dig. § 1010.*]

Error from District Court, El Paso County; A. M. Walthall, Judge.

Action by the Chicago Crayon Company against J. H. May and others. Judgment for plaintiff against defendant named, and he brings error. Reversed and remanded.

Goldstein & Miller, Harris Walthall, and H. R. Gamble, all of El Paso, for plaintiff in error. C. A. Kinkel, of El Paso, for defendant in error.

PETICOLAS, C. J. The Chicago Crayon Company and one B. C. Martin entered into a contract, by which Martin became district manager of a certain district and obligated himself: First, to solicit orders, personally and through subagents, for frames and enlargement of portraits and to send said orders to the Chicago Crayon Company; second, to employ deliverymen to deliver portraits so sold by Martin and his agents, and to sell frames and collect moneys for both portraits and frames, said Martin being responsible for proper accounting by his subagents, and said deliverymen and collectors for such moneys as they collect or as were advanced to them in carrying on the business of enlarging pictures and selling frames; third, to return all samples and magnifying glasses furnished by the Chicago Crayon Company, or pay the cost price therefor. Martin executed a bond with J. H. May and Martin Lohman as sureties, the condition of which was that Martin should faithfully perform his duties arising under said contract. This suit was brought on said bond against the principal and sureties and was dismissed as to the principal and as to Martin Lohman, one of the sureties, and resulted in a judgment in the sum of $832.26, with interest and costs against the plaintiff in error.

The first assignment of error is that the court erred in overruling the plaintiff in error's general demurrer to the petition upon which the case was tried, because same does not allege or state any facts showing that the indebtedness which it claimed against the defendant and for which it sued arose out of such a breach of the contract for which plaintiff in error would be liable under the bond signed by him as surety. The allegation in the petition which most nearly approaches a sufficient allegation as against

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

this assignment is as follows: " * * * At or about which date plaintiff discovered that the defendant Martin had collected and wrongfully appropriated to his own use, himself and through his subagents, certain sums of money which were due and belonged to plaintiff, amounting to the total sum of $832.26. * * * "

There seems to have been no action on the general demurrer; but we believe the matter is sufficiently reached by the second assignment of error, which is to the effect that the judgment of the court below is wholly unsupported by the pleadings, in this: That plaintiff's trial petition did not allege or state any facts showing that the indebtedness which defendant in error claimed against the defendant Martin arose from such a breach of the contract between Martin and the crayon company as that the surety would be liable under the bond of said Martin.

In this connection, also, we sustain the third assignment of error, which is to the effect that the judgment of the court is wholly unsupported by the evidence, in that the evidence fails to show that the indebtedness of Martin arose out of such a breach of the contract as that the surety would be liable therefor.

[1, 2] The liability of accommodation sureties is indubitably held to be strictissimi juris, and before any liability could be shown in this case against the surety, the plaintiff below was bound to plead a state of facts showing that the indebtedness claimed against Martin arose for money collected, (a) from the sale of frames, or (b) from the enlargement of portraits, or (c) for money advanced to him for the purpose of soliciting orders for the sale of frames and the enlargement of portraits. We think it is clear that the petition in this case does not meet this requirement. The allegation is that Martin collected and wrongfully appropriated certain sums of money which were due and belonged to plaintiff. As against Martin, the allegation was clearly sufficient to show a cause of action; but, as against the surety, it was not sufficient to show a cause of action, in that the only liability that could be predicated against the surety was limited by law to moneys collected, and not accounted for, in one of the three ways stated above, being the provisions of the contract.

What has been said with reference to the insufficiency of the allegation also applies to the insufficiency of the evidence.

[3] The fourth assignment of error is to the effect that, under the contract between the Chicago Crayon Company and Martin, Martin's obligations were to solicit orders for the enlargement of portraits, to sell frames, to make a proper accounting therefor, and if the crayon company advanced any money for that purpose to make proper accounting for it. That it affirmatively appears in the account sued on and introduced in evidence that $856 of the account arose from the sale of wire to said Martin, and wire being a matter outside the scope of the bond, the judgment is for that reason and to that extent unsupported by the evidence. The defendant in error takes the position that it is a matter of common knowledge that wire is used to hang pictures. It does not become necessary for us to determine whether or not we can take judicial knowledge of that fact, though we incline to the opinion that we can take judicial knowledge that wire is used to hang pictures. The question as shown by this record presents itself, however, in a different light. The surety's obligation is limited strictly by the law to the obligation which Martin undertook in his contract with the crayon company, and this obligation is rigid; it cannot be extended by construction, interpretation, or presumption one iota farther than the literal terms of the bond. It will not be forgotten that, in the celebrated case over which one Portia presided, Shylock was awarded on his bond as against the surety the pound of flesh but not one drop of blood. While the case cited is but fiction, it nevertheless is perfectly illustrative of the doctrine applicable here. So far as May, the surety, had obligated himself, he will be bound; but no farther. There is nothing in the contract obligating Martin to account for the cost of wire or moneys collected for the sale of wire, and therefore there is an utter absence of any obligation against the surety for wire; and while we might judicially know that wire is used to hang pictures, in the absence of proof we certainly cannot judicially know that this wire was used to hang these pictures. Indeed, we, on the facts, are somewhat at a loss to conceive how $856 worth of wire could be legitimately used to hang $2,900 worth of pictures.

[4] It is contended on behalf of the defendant in error that as there were no conclusions of law and fact, if on any phase of the evidence it could support the judgment, the judgment will be affirmed. This is unquestionably a substantially correct statement of the general rule on that subject; but we do not believe it applicable to this case. What the obligation of the surety was is specifically and immutably shown by the contract and bond in the case. Using every presumption which we are permitted to indulge in, in a case where there are no conclusions of law and fact, we are still left with the conviction that the surety was held bound for an obligation he did not undertake in so far as the wire is concerned, and that the evidence and pleadings on behalf of the plaintiff below do not affirmatively show that the defalcation of Martin was for matters covered by the bond.

The remaining assignments of error are addressed to questions which we anticipate will be so cleared up by testimony on another

trial as that they will not arise again, and therefore we do not discuss them.

For the errors indicated, the case is reversed, and the cause remanded.