**P. B. YATES MACH. CO. v. GROCE et al.†**
(No. 8721.)

(Court of Civil Appeals of Texas.  Galveston.
Dec. 24, 1925.  Rehearings Denied Feb. 11,
1926.)

1. Evidence ⬯417(12).

Buyer, in absence of mistake or fraud, may
not prove conditions or warranties not contain-
ed in contract plainly prohibiting modifications
or additions not therein contained.

2. Sales ⬯273(3)—Under contract contain-
ing no express warranty, buyer could claim
only benefit of warranty implied by law.

Under a contract of sale of machinery,
which contained no express warranty of any
kind, the buyer could claim at the most only
the benefit of the warranty implied by law that
the machine was reasonably fitted to perform
the work which the seller knew it was pur-
chased to perform.

3. Sales ⬯426—Buyers' remedy for breach of
warranty held restricted by contract to re-
turn of article bought, without right to dam-
ages.

Under a contract of sale of a machine re-
quiring buyers, if they rejected machine, after
30 days trial, to return it at once, seller was
not bound by any representation or warranties
not expressed, and, if the machine was not
satisfactory after trial, buyers' remedy was
limited to return of the machine, without right to
damages for breach of alleged warranty.

4. Sales ⬯426—Seller's waiver of condition
requiring return of machine within time lim-
ited did not waive right to limit buyers' rem-
edy for breach of warranty to return of ma-
chine.

Where contract of sale of machine required
buyers, in case they found machine unsatisfac-
tory, after 30 days' trial, to return it, seller's
waiver of the condition requiring machinery to
be returned within that time did not waive
restriction of buyers' remedy for breach of
warranty to a return of the machine.

† Writ of error granted March 31, 1926.

**5. Sales ⊙≈166(1).**

Buyers of worthless machine which they returned to seller were not liable for purchase price.

Graves, J., dissenting in part.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by J. W. Groce and others against the P. B. Yates Machine Company, who interposed a cross-action. From the judgment rendered in favor of plaintiffs, defendant appeals. Affirmed in part, and reversed and rendered in part.

Campbell, Myer, Simmons & Hawkins, of Houston, for appellant.

K. C. Barkley and W. Owen Dailey, both of Houston, for appellees.

PLEASANTS, C. J. This suit was brought by appellees against appellant to recover damages for the alleged breach of a contract of sale, by which appellant sold appellees a machine designated in the contract as a No. 111 molder.

The material allegations of plaintiff's pleadings are thus sufficiently stated in appellant's brief:

"The material allegations of plaintiff's first amended original petition is that the Yates Machine Company sold (June 13, 1922) to Groce Hardwood Manufacturing Company a Yates molder machine, 'and represented and guaranteed that the said machine would properly do the work desired by plaintiff of a machine of such character, and sold the same on such representation and guaranty'; that Groce Hardwood Manufacturing Company was not familiar with such machines and relied upon the representation and guaranty; that Yates Machine Company was familiar with the work defendant desired to do, among others a manufacture of flooring; that the machine was received, set up, and failed 'to do the work required thereof,' resulting to plaintiff in damages as follows:

"(a) Freight, $266.40.

"(b) Unloading charge, $25.

"(c) Cost of labor for installing, $140.

"(e) Plaintiff's pay roll August to December 1, 1922, operating and attempting to operate the machine, $657.85.

"(f) Difference in market price and sale price of 6,500 feet white oak flooring manufactured by machine, $260.

"(g) Freight, unloading, cost of one car of white oak lumber returned to seller, 'because said lumber would not make salable flooring,' $581.81.

"By trial amendment filed under circumstances shown in appellant's bill of exception No. 2, the above-quoted language was changed so as to read 'because the said Yates machine would not make salable flooring from same.'

"(h) Defendants' loss of $1,000 on the sale price of flooring manufactured by the machine, being the difference between the market price of properly manufactured flooring and the sale price of flooring manufactured.

"That the purchase contract signed provided that the machine should be returned 30 days from the date of shipment, but said time was insufficient for plaintiff to determine whether representations alleged, express or implied warranty, were true and to that extent legal fraud is alleged; that within two weeks plaintiff notified Yates Company that the machine would not do the work represented the defendant requested plaintiff to await the arrival of defendants' agent and that written notice of rejection was given within a reasonable time; that if there were no expressed representations, then there was an implied warranty that the machine would manufacture merchantable oak flooring, inasmuch as defendants' agent was informed that plaintiff wanted the machine for the purpose of manufacturing molding and oak flooring; that plaintiff had on hand oak staves—known to defendants' agent—from which plaintiff desired to manufacture oak flooring strips; that no consideration existed for the indebtedness represented by the signed contract, because of breach of warranties and representations alleged. The prayer is for damage alleged, foreclosure of an attachment lien, and cancellation of contract."

Defendant answered by general demurrer and by special exceptions, the nature of which, if necessary for the purposes of this opinion, will be hereinafter stated. It further answered by general and special denial of the material allegations of plaintiff's petition, and specially pleaded a provision in the contract, hereinafter set out, as a defense against any claim for damages by plaintiffs.

By cross-action defendant pleaded the contract and sought to recover thereon the purchase price which plaintiffs had agreed to pay for the machine amounting to the sum of $3,758.64.

By supplemental petition, plaintiffs answered defendant's cross-action by general demurrer and special exception and by special pleas, setting up failure of consideration and waiver by defendant of the provision in contract which it claims relieves it of any liability for damages sustained by plaintiffs.

Additional supplemental pleadings filed by both parties contain no material allegations or averments and in no way change the character of the suit as evidenced by the pleadings before set out.

The cause was tried by a jury in the court below upon special issues and based upon the findings of the jury. Judgment was rendered in favor of appellees for the sum of $2,096.94 and against appellant on its suit to recover the purchase price of the machine.

The evidence shows that appellees, under their then firm name and style, Groce Hardware Company, on May 23, 1922, wrote appellant a letter asking the price of type C-1 molder, one of the machines manufactured and sold by appellant, and inquiring as to the fitness of the machine for manufacturing oak flooring. In response to this letter, appellant wrote appellees thanking them for their letter and telling them that one of its

agents would call on them in a few days and the writer trusted would be able to show them a machine adapted to their work, and would obtain their order. This letter further stated:

"We might say that the C-1 molder is adapted for not only making molding, but in large quantities and at fast speed. But for anything else that can be run on a machine of this nature, it would be particularly good for you for making flooring in considerable quantities. Of course, if you wanted a machine for absolutely nothing else but a hardwood flooring machine, we would recommend to you our A-7 special flooring machine."

On June 12, 1922, an agent of appellant, Mr. G. W. Simmons, called on appellees and after ascertaining the character of machine appellees desired to purchase, sold them a No. 111 molder, another type of machine manufactured and sold by appellant. The contract of sale made by the parties was in writing signed by appellees on June 12th and thereafter approved and signed by appellant on June 20, 1922. The machine was shipped on July 20, and reached Houston on July 29, 1922, and was set up at appellees' place of business July 31st.

On August 15th, after appellees had been trying to operate the machine for 15 days, they wrote appellant they were unable to make it do any kind of satisfactory work and asked that Mr. Simmons be sent to put it in proper working condition. On August 18th, appellant replied to this letter informing appellees that it had an agent on the way to look after the machine, and saying that though the machine was not a flooring machine, it ought to make flooring out of the material mentioned in appellees' letter without trouble. The agent of appellant, referred to in this letter, was prevented by sickness from looking after the machine, and appellant sent another agent, a Mr. Lanius, a machinist, who reached Houston on September 1, 1922, and supervised the operation of the machine for 10 or 12 days, during which time he manufactured for appellees approximately 6,500 feet of flooring, and offered to manufacture more, but appellees declined the offer, and on September 18th wrote appellant that the machine was not operating to appellees' satisfaction. On November 9th, appellant, not having received the consideration which appellees had agreed to give for the machine wrote them that "they would be disappointed if the machine was returned, as Mr. Lanius reported samples showing fine work." On December 1, 1922, appellees wrote appellant that they had sold the planing mill and requested appellant to come and remove the machine at once. This letter also contained a claim for damages in the sum of $691.40. Appellant in reply to this letter wrote appellees that their agent would see appellees the first week in January, 1923, in regard to the machine and

requesting appellees to await an interview with the agent. This interview did not occur, and appellees filed this suit on January 25, 1923, and attached the machine. Before the trial in the court below, the parties entered into a written agreement reciting that appellees held possession of the machine, and that it should be sold for the benefit of the parties; the disposition of the proceeds to be determined by the result of the suit.

The written contract of sale, which is evidenced by a written order for the machine, signed by appellees, and accepted and signed by appellant, after describing the machine ordered and stating the consideration to be paid therefor by appellees, contains the following stipulations and agreements:

"It is agreed that title to the property mentioned herein, and all subsequent additions thereto, shall remain in P. B. Yates Machine Company (the consignor) until fully paid for in cash; that in case of rejection of the property forwarded, or failure to pay as stated herein undersigned the purchaser shall at once return and deliver the property in good order to consignor f. o. b. cars at Beloit, Wisconsin, that a retention of the property forwarded after thirty days from date of shipment shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor and void all its contracts of warranty, express or implied. * * * It is agreed that this contract is not modified or added to by any agreement not expressly stated herein: That this contract shall not hereafter be changed or modified in any respect unless a written memorandum, embodying such changes or modifications, duly dated, signed by both parties hereto, and bearing distinct date reference to this contract be attached to and made a part of this agreement."

(Note: Printed across the face of the above contract is the following):

"This order not subject to cancellation. Demonstrator will be charged for at not tell (less) than $15.00 per day, plus necessary expenses, charge beginning on date of leaving factory and continuing until return. A charge of about ten per cent. will be made when goods are returned to factory by customer.

"It is hereby agreed that if a demonstrator be furnished the purchaser shall (in addition to contract price) pay the seller for demonstrator's expenses and that the printed matter on the reverse side shall be a part of this contract."

When Simmons sold the machine to appellees, he knew the material appellees had on hand and out of which they desired to make oak flooring, and while he advised appellees to buy a higher priced regular flooring machine, he told them that the machine he sold them would make merchantable flooring out of appellees' material.

In response to special issues submitted by the court, the jury found that the machine did not turn out hardwood flooring in merchantable quantities and was not reasonably adapted or suited for doing such work; that appellant waived the 30 days' limit upon the

return of the machine by appellees and also waived the provision of the contract requiring its return. They further found that the several items of damages claimed by appellees, and which constituted the aggregate amount of damages upon which the judgment is based, were sustained by appellees and were each in the reasonable contemplation of the parties at the time the contract was made as a probable result of the breach of the contract by appellant. In answer to a special issue submitted at request of appellant, the jury found that the machine would not turn out merchantable hardwood flooring, as represented by appellant's agent Simmons, and in answer to special issue submitted by appellee found that the machine was worthless to appellees for the purpose for which it was sold to them. There is sufficient evidence to support each and all of these findings.

Under appropriate assignments of error, appellant presents two propositions, which, in the opinion of the majority of the court, should be sustained and require a reversal of the judgment of the trial court. These propositions are as follows:

"First Proposition. Under fourth and nineteenth assignments of error. A mandatory provision in a sales contract for trial and return in event of breach of warranty furnishes the exclusive remedy and precludes action for damage by reason of the breach.

"Second Proposition. Pertinent to third and twenty-first and twenty-fifth assignment of error. When a written contract purports to include the whole engagement of the parties, specially providing that such writing constitutes the entire agreement and fully expresses the terms thereof, oral proof of a warranty, concering which the writing is silent is not admissible."

We shall consider these questions in inverse order to that in which they are presented.

[1, 2] As before set out by the written contract signed by appellees, they expressly agreed that the contract as written should not "be modified or added to by any agreement not expressly stated therein." This language is plain and unambiguous, and in the absence of any pleading of mistake or fraud appellees must be held bound by their plainly expressed agreement, and will not be permitted to add any conditions or warranties to the contract not expressed therein. The contract contains no express warranty of any kind, and appellees can at most only claim the benefit of the warranty which the law implies, that the machine was reasonably fitted to perform the work which appellant knew it was purchased to perform.

[3] By another expressed provision of the contract before set out, appellees agreed that in case they rejected the machine after 30 days' trial they would at once return it to appellant in good order, and that the retention of the machine for a longer time than 30 days should constitute trial and acceptance and would avoid all contracts of warranty, express or implied. This provision of the contract is also plain and unambiguous. We do not think the contract is susceptible of any other construction than that appellant was not to be bound by any representation or warranties not expressed in the written contract, and that if the machine should not do satisfactory work after a trial of 30 days, appellees' only remedy was to rescind the contract by returning the machine. This provision in the contract for trial and return being mandatory, appellees cannot maintain their suit for damages for breach of the alleged warranty. Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 459.

[4] The jury have found on sufficient evidence that appellant waived the return of the machine, but this waiver cannot affect the plain and unequivocal meaning of the contract that appellees are not entitled to recover damages for breach of warranty of the capacity of the machine. By permitting the appellees to keep the machine on trial for a longer time than 30 days appellant did not waive its right to insist that appellees are bound by their agreement not to claim damages for a breach of warranty.

[5] There is no charge of fraud in the petition other than that appellant knew when the contract was entered into that 30 days was not a sufficient time in which to test the capacity of the machine, and that limiting this time to 30 days was in law a fraud upon appellees. It is not alleged that the contract was procured by fraud, and its rescission is not sought on this ground. The suit for damages is based wholly on the alleged breach of warranty of the machine, and appellees' suit to recover the contract price of the machine is resisted on the ground of failure of consideration, in that the machine is worthless to plaintiffs.

The jury having found that the machine is worthless to appellees, they should not be required to pay the purchase price therefor, and that portion of the judgment of the trial court should be affirmed; but we do not think, for the reasons above stated, the judgment in appellees' favor for damages can be sustained, and that portion of the judgment should be reversed and judgment here rendered in favor of appellant.

Reversed and rendered in part; affirmed in part.

GRAVES, J. (dissenting). As the majority opinion correctly recites, the appellees not only plead the waiver of the so-called 30-day provision both as to the specified time and as to the return of the machine vel non, but the jury also found on sufficient evidence that such waiver occurred. We therefore, it seems to me, have a case presenting the very question the Commission of Appeals expressly did not decide in Nunn v. Brillhart, 242 S. W. 459, the sole citation in support of this

decision. There the action upon appeal was only between the surety on the bond of the contractors for the heating system and the owner of the premises where it was installed. This owner was the defendant in error, and in response to his effort to interpose against his opponent in the litigation, such surety, the defense that the contractors had waived the provision for removal of the system and return of the. consideration by their mere failure to comply with it, the court, applying the rule of strictissimi juris as to the liability of sureties, held:

"Defendant in error contends that the provision for removal of the heating system and return of the consideration paid was waived by the contractors' failure to comply therewith, and that because of such failure he is entitled to maintain an action for damages. We have carefully examined the authorities cited in support of this contention. In some of the cases so cited a subsequent mutual agreement was held to have modified or superseded the original stipulation. The remedy sought in nearly all of the other cases cited was a rescission and the recovery of the purchase price, and it was merely held that the stipulated return of the article purchased as a condition precedent to such rescission and recovery had been waived. *However, it is not necessary to decide the question.* Plaintiff in error is a mere surety. He is entitled to stand on the very terms of his contract, and his liability cannot be extended by implication or otherwise beyond such terms. Mere knowledge on his part that his principals had failed to remove the heating system and return the purchase price would not defeat such right. Smith v. Montgomery, 3 Tex. 199, 209; Ryan v. Morton, 65 Tex. 258, 260; May v. Chicago, Crayon Co. (Tex. Civ. App.) 147 S. W. 733." The underscoring is my own.

To hold, notwithstanding the actual waiver of it so pleaded and proved by the parties entitled to interpose that defense in the present case, that "this provision in the contract for trial and return being mandatory, appellees cannot maintain their suit for damages for breach of the alleged warranty," is to go beyond any cited authority and to make of this recitation in the contract a hard and fast thing like unto the law of the Medes and Persians, "Which altereth not;" not only that, but intrinsically, too, it neither appears to require such construction nor to import the same thing as that class of warranties under review in the Brillhart Case, that is, where the parties have expressly agreed that the remedy of rescission is to accrue' only upon a breach of the warranty; there is no such agreement here, nothing is said about what the remedy shall be in event of an accomplished breach by the seller of the warranty, but the provision simply is:

"In case of *rejection of the property* forwarded, or *failure to pay* as stated herein undersigned the purchaser shall at once return and deliver the property in good order to consignor f. o. b. cars at Beloit, Wisconsin, that a retention of the property forwarded after thirty days from date of shipment shall constitute a trial and acceptance, be a conclusive admission of the truth of all representations made by or for the consignor and void all its contracts of warranty, express or implied."

The reasonable meaning of this seems to be, as the inserted italics indicate, that if the purchaser should reject the machine on arrival, or should fail to pay as stipulated, he should return it; that if he uncomplainingly retained it for more than 30 days, he should then be bound to keep it without complaint at all—not that he agreed in advance to restrict his remedy to a return of the machine, in case the seller should breach its warranty to him by failing, after trial on his complaint, to make it do the work it was sold to do. Nothing in the contract indicates that there was any such mutual contemplation or understanding between its makers. The provision is plainly one for the benefit of the machinery company, which it not only could waive, but which also, since the entire writing was prepared by it, will be construed most strongly against its interest. But if it does not clearly on its face import that, it becomes ambiguous and the acts of the parties themselves, done in carrying out their engagement, are especially pertinent in determining what they understood their agreement to be. These, too, strengthen the view of it just expressed; in brief, they were: On August 15, 1922, that is, well within the stipulated 30 days, appellees by letter notified appellant that the machine was not as represented, would not do the work it was sold to do, was ruining all the material they put through it, and adding:

"We have ruined considerable material already, and must now have some relief from you in one way or another; if the molder is properly equipped for doing this work, and you can turn out accurate well manufactured material with it, we want you to show and prove this at the earliest possible moment under your promise. Would like to have Mr. Simmons come here at once and put the machine in proper condition to do the accurate and satisfactory work that this machine should do. Please act immediately on this matter and advise us by wire when your man will be here."

To this appellant replied on August 18th, by both telegram and letter; the telegram being:

"Machine should do what represented to do. Representative on way to see you."

The letter, after reciting the substance of the telegram, continues:

"There is no reason that you cannot make, without any trouble, flooring or your cedar lining. Of course, this machine *is not a flooring* machine, as you know, but when it comes to running this class of stock, which you mention in your letter, you should have no trouble whatsoever. And I believe you will get

straightened out next week to your entire satisfaction."

Again, on August 24th, the appellees wrote appellant, complaining that its promised man, for whom they had been waiting since the 18th at heavy expense and serious damage, had not arrived. Appellant responded by letter on August 28th, explaining that sickness had prevented its first representative from attending to the machine, and then saying:

"I am sending tonight from here, direct to Houston, a first-class demonstrator and flooring man, whom will get you out of your troubles I am sure."

This was the Mr. Lanius, referred to in the majority opinion, but its recitation that he manufactured 6,500 feet of flooring and offered to manufacture more, etc., is incomplete, as the jury in answer to special issue No. 9 found that this 6,500 feet was not properly machined into merchantable flooring; this finding is not attacked. Furthermore, there was sufficient evidence to justify a further finding that Mr. Lanius never could make the machine work properly, so admitted, and gave up the effort, or to quote the testimony of appellee J. W. Groce:

"Mr. Lanius never was able to turn out merchantable flooring out of that stock with that machine. As well as I remember, Mr. Lanius talked practically every day, and several times a day, and he said that it was not a flooring machine, and would never give satisfaction, could never be made a flooring machine, that he had done everything he could do, that he had changed the pressure bars and had done practically everything he knew to do and he was ready to go. That machine never was worth anything to us in our business; it was a great injury to us."

Within a few days after Mr. Lanius left, appellees, by letter of September 18th, reiterated to appellant that the machine still would not work, and the latter replied by letter of September 22d, expressing surprise and regret at the information, promising its best attention, and concluding:

"You may rest assured we will do the very best we can to get the matter adjusted to your entire satisfaction."

Yet again, on November 6th, appellees by letter continued their complaints against the machine, and the appellant, evidently in the meantime having contrary reports about it from its Mr. Lanius, replied on November 9th as follows:

"We are very much surprised to receive your letter of November 6 regarding the No. 111 molder. We are somewhat at a loss to understand the situation because Mr. Lanius has submitted samples of the work done on this machine which was at 75 feet per minute, and which are certainly fine.

"We shall be very much disappointed indeed if this machine is returned to Beloit, and might say that we have asked our Mr. Lovell to call upon you in connection with this matter. You will undoubtedly hear from him shortly."

Appellees responded on December 1st, with this final letter:

"In regard to your No. 111 Yates molder. On Nov. 9th we received a letter from your Beloit office to the effect that you would be here soon to make some disposition of this machine, but nothing has been done yet.

"We have sold our planing mill to a Houston concern and they will take possession soon, and it is necessary that you come and remove your molder and take care of same at once.

"Inclosed you will find our bill of costs against this machine, which amounts to $691.40, and this must be paid before the molder is removed from the plant. Let us hear from you promptly."

The litigation then ensued, in the manner stated in the majority opinion.

So that, in the light of the circumstances surrounding the parties, the inference to me from the terms of the contract and this course of dealing alike is that appellant, at least by plain implication of law, warranted the machine as being capable of making merchantable flooring and recognized an obligation to make that assurance good, save only in event appellees received and simply kept it for more than a month, despite the presence in their agreement of this so-called 30-day provision; but if that conclusion as a whole is not sound and it should be held with the majority that appellant reserved the right to require the return of the machine as the sole consequence of a breach of the contract on its part, then I think these acts alone conclusively show that it waived that right and undertook to so stand behind its machine, as the jury found, irrespective of the number of days involved; and if it did this "subsequent mutual agreement modified or superseded the original stipulation," for the breach of which it became liable to the appellees for such damages as reasonably flowed to them in consequence.

Beginning with appellees' first-quoted letter of complaint, which was written within about half the required time, there was a virtual refusal to keep the machine unless appellant would make it turn out merchantable flooring, and the latter not only promptly accepted the gauge thus thrown down, but continued its efforts to comply with it, with full knowledge of the consequences in waste of material, expense, and loss of time to the appellees, until advised by them on December 1st that it must be removed and the expenses they were out on it first paid.

As a corollary, it seems obvious that the provision in the contract against a modification unless by written memorandum attached thereto does not prevent the proof of a subsequent agreement altering the terms of the contract, even though oral. Braden Co. v. Seng (Tex. Civ. App.) 179 S. W. 1103.

Under these considerations, I cannot agree to the rendition against the appellees of their cause of action for damages; but I think they were permitted to recover improper elements, and that this court should have on that account remanded the cause; for instance, the charge of $65 for labor in installing the machine, incurred during the week ending July 29, which was before it arrived, cannot be sustained; neither does the evidence seem to me to indicate that all of the $657.87 allowed as pay roll for efforts to operate the machine from August 1st to September 16th was incurred for that purpose; under the undisputed evidence, also, the item of $581.81 expenses contracted in the purchase from and return to the Southern Pine Lumber Company of a car of white oak lumber, alleged to have been made necessary by the failure of this machine to work, appears to have been too remote, since the purchase was made more than 15 days after the contract in suit was signed, and no special circumstances showing that it would even be needed were brought home to the appellant.

There are probably other items subject to like criticism, but what have been pointed out are enough to require a remand, since the record is such that this court could not separate the wheat from the chaff. In other respects than are herein indicated, I do not differ with the majority.