THE MOSAIC TILE COMPANY, PLAINTIFF-RESPONDENT, v. J. WILLIAM JONES, DEFENDANT-APPELLANT.

Submitted May 26, 1933—Decided September 27, 1933.

For the defendant-appellant, *McDermott & Finegold.*

For the plaintiff-respondent, *E. Garfield Gifford.*

The opinion of the court was delivered by

PERSKIE, J. This appeal brings up for review a judgment of $3,070.11 entered on December 29th, 1932, on a jury verdict in favor of the plaintiff-respondent and against the defendant-appellant. The plaintiff-respondent sued on a guarantee which was in the following form:

"Whereas the Beach Construction Company is erecting a building on Second Avenue, Bradley Beach, New Jersey, and the Mosaic Tile Company has been requested to furnish tile to Harry Nelson for said Beach Construction Company, said tile to be used in the furnishing and erection of said building, and

"Whereas in order that the work of completing said building may be started and proceeded with, the creditors of said Beach Construction Company have entered into an agreement that they will receive payment of their claims from the proceeds of a certain mortgage of one hundred thirty thousand dollars, said sum of money to be paid to the creditors *pro rata,* in the event that money paid from the proceeds of said mortgage to the Mosaic Tile Company shall be insufficient to pay the full amount due for supplying said tile to Harry Nelson as aforesaid and in consideration of the Mosaic Tile Company joining with other creditors in signing said agreement with the trustees covering payment on said job, this will guarantee the payment to the said Mosaic Tile Company of any balance

of its account that may remain unpaid after distribution of the balance of the proceeds of the mortgage as aforesaid.

Witness as to J. Wm. Jones,

    DONALD S. BOWIE.

J. WILLIAM JONES."

The Beach Construction Company owned lands at Bradley Beach, and was engaged in constructing an apartment house thereon. Plaintiff-respondent was to furnish tile and had already supplied tile to the extent of $410.26 when the Beach Construction Company became financially involved or embarrassed, as a result of which it was unable to complete the undertaking. As a result of various conferences between the owners, material men and others in interest, a trust agreement was prepared on July 6th, 1929, in which John W. Davis and J. William Jones and J. William Jones, individually, were designated as trustees. The trust agreement provided that the building was to be completed, and moneys disbursed out of a proposed $130,000 building and loan association mortgage which had apparently been secured. All parties in interest executed this trust agreement with the exception of the plaintiff-respondent, who was to furnish additional tile to the amount of $2,500. The plaintiff-respondent refused to execute the agreement unless it was guaranteed the payment of the tile yet to be furnished. In order to induce the plaintiff-respondent to supply this tile and execute the trust agreement the defendant-appellant signed the guaranty aforesaid. Whereupon plaintiff-respondent delivered tile to the amount of $2,502.77. The trustees proceeded with the completion of the building. It, however, developed that the building and loan association which had agreed to advance the sum of $130,000 (all necessary instruments having been executed, delivered and recorded) found itself unable to do so. It further appears that, if the proceeds of the $130,000 mortgage had been received it would not have been sufficient to meet the disbursements necessary to complete the undertaking, and that the creditors would have received nothing. Thereupon the trustees, without notice to the plaintiff-respondent and without its consent, negotiated a new mortgage loan

in the sum of $150,000. The proceeds of this mortgage were also insufficient to meet the necessary disbursements and accordingly the creditors received nothing. Whereupon this suit was brought upon the guaranty. Motion for nonsuit as well as motions for directed verdicts were made by each party and were refused. This we think was proper. The testimony adduced presented a jury question. The defendant-appellant *in limine,* contends that the guaranty was conditional, *i. e.,* if the proceeds of the $130,000 mortgage were insufficient then defendant-appellant could be made to respond to his guaranty. It further contends that the placing of a new mortgage of $150,000, though without notice to or consent of the plaintiff-respondent, released the guarantor of liability. With this contention we do not agree. "The rule that a guarantor is entitled to have his undertaking strictly construed does not mean that there should be any strict, technical accuracy—but the guarantee should receive a liberal, fair and reasonable interpretation in furtherance of its spirit and in order to attain the object designed." 28 *C. J., p.* 936, § 81, 4. As we read the guarantee it appears to us that the clear intent thereof was simply that if the proceeds of the mortgage were insufficient, he, the defendant-appellant, would pay. Obviously, the proceeds of the $130,000 mortgage was insufficient as were likewise the proceeds of the $150,000 mortgage. To permit the defendant-appellant to avoid liability after the plaintiff-respondent had furnished title, by changing the amount of the mortgage to a higher figure, without its knowledge or consent, would not only defeat the fair, reasonable and clear intent of the spirit and object designed to be attained but would defeat and destroy the fixed and vested rights of the plaintiff-respondent in the premises. We are of the opinion that the guarantee in the instant case was one of payment and not merely a guarantee of collection as pointed out by Mr. Justice Parker in the case of *Pfeiffer* v. *Crossley,* 91 *N. J. L.* 433; *affirmed,* 92 *Id.* 638. Just as soon as the plaintiff-respondent ascertained that the proceeds of the mortgage of $130,000 or that of the $150,000 were insufficient, its rights became fixed. Again in the case of *Pfeiffer* v. *Crosley, supra,* it was held that the "plaintiff was under no legal obli-

gation to foreclose the mortgage, but was entitled to hold the guarantor immediately upon a default. Her foreclosure was simply a favor to the defendant, and *a fortiori,* she was under no obligation to follow it up by a suit on the bond. It was for the defendant to pay, to take up the bond and mortgage and pursue the remedies thereon himself."

In other words the guarantor was not permitted to avoid liability because the person guaranteed favored the guarantor at his request. In the instant case the guarantor seeks to avoid liability because of the change made by himself in the mortgage without the knowledge or consent of the plaintiff-respondent. He was pecuniarily interested. He had advanced a large sum of money to help complete the undertaking.

Nor is this case in anywise similar to the case of *Lyon & Co.* v. *Plum,* 75 *Id.* 883, wherein Mr. Justice Parker held:

"A guaranty to a firm of a customer's running account is not operative as to credit extended after the admission into such firm of a new member, in the absence of anything to show that such change in the firm was originally contemplated by the guarantor."

The court very clearly pointed out that the addition of a partner to the firm was an additional risk which Plum (the guarantor) did not assume. Continuing in the case of *Lyon & Co.* v. *Plum, supra,* the court held:

"The rule as to changes in the firm secured is not confined to increase in a partnership by admission of a new partner, but extends to a decrease by voluntary act or by death, and to incorporation of the partnership, the general proposition being that transactions occurring after any material change in the status or composition of the party originally guaranteed will not be covered by the guarantee." *De Coly Guar.* (*Eng. ed.*) 250, 265; *Stranke* v. *Lee,* 3 *East* 484; *Dry* v. *Davy,* 10 *Adolph. & E.* 30. The American cases are to the same effect. *Penoyer* v. *Watson,* 16 *Johns.* 100; *Barnell* v. *Smith,* 17 *Ill.* 565; *Holmes* v. *Small,* 157 *Mass.* 221; *State* v. *Boon,* 44 *Mo.* 254; *Smith* v. *Montgomery,* 3 *Tex.* 199."

Let us briefly review the testimony adduced to determine how the guarantor himself regarded his guarantee? The

testimony tended to justify the finding of the jury that he at all times considered the trust agreement and his guarantee binding. (Cross-examination of J. William Jones):

"*Q.* What is your position now on that? Why do you say you should not be held liable? This is more or less informal, but I am curious to get your reaction. *A.* I say this: I have contended here that the money that came from this building loan, whether it was $130,000 or $150,000 should have been pro rated to every creditor. *Q.* Under the agreement? *A.* Yes; and then if they got $50 or $2,000 paid on their bill, J. William Jones paid the balance; no question about that. *Q.* That is the literal expression? *A.* Yes, sir. *Q.* You still say that? *A.* Yes, I was to stand good for anything over the *pro rata* share; they could have me for the whole thing."

From the proceeds of the $150,000 mortgage there was left about $28,000 which was disbursed, says the guarantor, contrary to the creditors' agreement. (Cross-examination of J. William Jones):

"*Q.* You still say the amount ought to be worked out so that it would show a *pro rata* of $10,000 to pay the plumber and $9,000 to the other material men? *A.* The whole $28,000 ought to be pro rated. *Q.* The whole $28,000 should have been pro rated; then after the percentage was ascertained and they would be paid say $2,500, with interest, and then you would say you would be liable for the balance? *A.* Yes, sir."

By the court: "*Q.* You understand the $28,000 was for the benefit of creditors? *A.* Yes, sir. *Q.* Under the agreement? *A.* Yes, sir. *Q.* Pro rata? *A.* Absolutely; if there were twenty creditors, and there was $20,000 they would get $1,000 apiece; if there were forty of them they would get fifty per cent. No man was to get more than his *pro rata* share."

The cases are replete in our state, and in other jurisdictions to the effect that material alteration or variance by a party to a contract discharges the guarantor who does not authorize or consent to the alteration or variance. However, if the guarantor authorizes or consents or assents to the same, he is estopped to interpose the alteration or variance as a defense. *Ferguson Carpet Co.* v. *Schottenfeld,* 109 *N. J. L.* 539 (surety

discharged for extension of time of payment unless he consented to the same) ; *Bradley* v. *Atlantic Guaranty and Title Insurance Co.*, 98 *N. J. L.* 741 (assignment discharged guarantor unless he agreed to it) ; *Mayor, &c., of the City of Newark* v. *Stout*, 52 *Id.* 35 (there must be some positive act done by the plaintiff to the prejudice of the surety, such as the surrender of security, or giving the principal time by a valid and binding agreement) ; *Solomon* v. *Gregory*, 19 *Id.* 112 (surety is discharged if time of payment is extended, unless there be evidence of assent by surety to such extension. In 28 *C. J.* 998, § 158, the principle is thus stated:

"Of course the guarantor is not released by changes made * * * with his knowledge and consent, and his assent to the change or modification will bind him without any new consideration."

See, also, 28 *C. J.* 1002, § 162. The rule may also be found in such typical cases as *Mersman* v. *Werges*, 112 *U. S.* 139; 5 *Sup. Ct.* 65; 28 *L. Ed.* 641; *Reese* v. *United States*, 9 *Wall.* 13; 19 *L. Ed.* 541; *Cross* v. *Allen*, 141 *U. S.* 528, 537; 12 *Sup. Ct.* 67; 35 *L. Ed.* 843; *Terrill* v. *Smith*, 8 *Conn.* 426.

It necessarily follows from proof submitted and the cases cited that if the guarantor in the instant case, made, authorized or consented to a material variance or change in the obligation, if such there be, he is not released, and *a fortiori*, the same conclusion is reached when the guarantor is a party to the variance, alteration or change, which is made without the knowledge or consent of the creditor guaranteed. Upon proof of these facts the guarantor is estopped to interpose the variance, alteration or change of his own making, as a defense.

We have examined the other reasons assigned for reversal and find them to be without merit. The case was properly submitted to the jury.

Judgment is affirmed.

*For affirmance*—The Chancellor, Chief Justice, Trenchard, Case, Donges, Heher, Perskie, Van Buskirk, Hetfield, Dear, Wells, Dill, JJ. 12.

*For reversal*—Parker, Bodine, Kays, JJ. 3.