**In the Matter of M.S. WIEN & CO., INC., Debtor.**

**SECURITIES & EXCHANGE COMMISSION, Plaintiff,**

**v.**

**M.S. WIEN & CO., INC., Defendant.**

**Bankruptcy No. 81–0889.**

United States Bankruptcy Court, D. New Jersey.

March 4, 1985.

David Shapiro, Cole & Deitz, New York City, for National Bank of North America.

Frank Vecchione, Crummy, Del Deo, Griffinger & Vecchione, Newark, N.J., for the Trustee.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

The trustee moves to specifically exclude counsel fees incurred by the claimant, a secured creditor, in defense of a related action. National Bank of North America (NBNA), the secured creditor, seeks payment of attorneys' fees under a consent order entered December 20, 1981 and a companion letter agreement, dated December 1, 1981.

The debtor and NBNA had maintained a business relationship from at least as far back as 1978. In that year, the parties executed a "General Loan and Collateral Agreement" which, among other things, provided for the payment of attorneys' fees to NBNA in any action relating to the enforcement of the agreement. The debtor also maintained a checking account at NBNA.

On September 8, 1981, the debtor deposited checks in its account maintained at First Jersey National Bank (First Jersey). The checks, totaling in excess of $1.8 million, were dishonored because of insufficient funds and returned by NBNA on September 10, 1981. The dishonorment was directly attributable to NBNA's set-off of an outstanding loan of the debtor.

Following these events, the parties negotiated in an effort to satisfy payment of NBNA's secured claim and the release to the debtor of securities valued at some $2 million then held by NBNA as collateral. The aforementioned letter agreement of December 1, 1981 and the consent order of December 20, 1981 resulted from the noted negotiations. The December letter agreement provides that the trustee guarantees to pay collection costs arising after the signing date, as may be allowed by the bankruptcy court. The letter agreement further provided that NBNA reserved its rights with respect to collection costs as provided for in existing loan documents. The consent order of December 20, 1981 stipulates that (1) debtor's indebtedness is to include expenses allowable under § 506[b]; (2) the claim may be increased by the amount of any claim asserted against NBNA in connection with its dealings with the debtor; (3) the trustee guarantees payment of such allowed claim.

On March 15, 1982, First Jersey filed suit against NBNA in the U.S. District Court for the Southern District of New York. That action was based on NBNA's dishonor of the debtor's checks in September of 1981. On March 26, 1982, counsel for the trustee was informed of the action. Thereafter, in September of 1983, an out-of-court settlement was reached. During the intervening period, counsel for the trustee and NBNA informed each other of developments and generally acted in a cooperative manner in pursuing a settlement with First Jersey. Worthy of mention here is NBNA's service of a third-party complaint upon the trustee in October of 1982. At no time did counsel for either side object to or question any actions taken by the other.

Following the settlement, specifically on October 13, 1983, and pursuant to the aforementioned consent order and letter agreement, NBNA made a demand for payment of its attorneys' fees of some $53,000. The trustee opposes this demand.

 The precise issue here is whether NBNA is entitled to attorneys' fees incurred in the First Jersey action as part of its allowed secured claim, pursuant to the consent order and letter agreement entered into by the parties.

The Bankruptcy Code provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsec-

tion [c] of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose.

11 U.S.C. § 506[b] (1979). It is well settled that attorneys' fees are included in the definition of costs under this statute. *Mellon Bank, N.A. v. Sholos (In re Sholos)*, 11 B.R. 782, 785 (Bankr.W.D.Pa.1981). *See also* 3 *Collier on Bankruptcy* ¶ 506.05 (15th ed. 1979). The amount and type of attorneys' fees to be allowed are controlled by the underlying security agreements. *Id. Also see In re Hart Ski Mfg. Co., Inc.*, 9 B.R. 397, 399 (Bankr.Minn.1981).

In determining the proper measure of attorneys' fees, there exists some controversy as to whether state or federal law is controlling in the interpretation of the underlying security agreement. Upon an analysis of the legislative history of the Bankruptcy Code, it has been held that federal law, as administered by the bankruptcy court, will control. *ITT Industrial Credit Co. v. Scarboro (In re Scarboro)*, 13 B.R. 439, 4 C.B.C.2d 1222, 1226 (M.D.Ga. 1981). In reaching its conclusion, the *Scarboro* court leaned on the pronouncements of Congress prior to the enactment of the Bankruptcy Code. The House version called for state law to control; the Senate version was silent. The legislative history of the final adoption notes that the language of the House version was rejected in favor of a Senate amendment of § 506[b]. The history states "[i]f the security agreement between the parties provides for attorneys' fees, it will be enforceable under Title II [sic], notwithstanding contrary law, . . . ." 124 Cong.Rec.H. 11,095 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); S. 17,411 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini). The prevailing view would appear to favor federal supremacy. *Accord* 3 *Collier on Bankruptcy* ¶ 506.05 (15th ed. 1979).

■ If, however, the Court were to find that state law is controlling, then the law of the forum state bears review. In considering guarantors and sureties, Chief Justice Vanderbilt opined "[i]t has long been settled law that a surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by implication or by construction beyond the confines of its contract." *Monmouth Lumber Co. v. Indemnity Ins. Co. of N. America*, 21 N.J. 439, 452, 122 A.2d 604 (1956). While the foregoing would seem to bind the courts to a strict, "black-letter" mode of interpretation, this Court is not of that opinion. The seeming harshness of the *Monmouth Lumber* rule is ameliorated by the holding of *Mosaic Tile Co. v. Jones*, 111 N.J.L. 385, 168 A. 629 (1933), wherein the Supreme Court held:

> The rule that a guarantor is entitled to have the undertaking strictly construed does not mean that there should be any strict, technical accuracy—but the guarantee should receive a liberal, fair and reasonable interpretation in furtherance of its spirit and in order to attain the object designed.

*Id.*, 168 A. at 630. This Court does not find that *Monmouth Lumber* and *Mosaic Tile* are inconsistent. While it is clear that New Jersey courts favor strict construction of contracts binding a guarantor, such construction must be balanced by applying a standard calling for the reasonable interpretation of such agreements.

■ In view of the foregoing, the Court concludes that the First Jersey proceeding was the type of claim against NBNA contemplated by the consent order; that the New York litigation was an outgrowth of NBNA's dealings with the debtor and is the type of action specifically addressed in the text of the consent order; that the costs of defending the suit are collection costs, payment of which is guaranteed by the trustee, as that term is used in the letter agreement. It does not do violence to the meaning of the term "collection costs" to say that it includes the costs incurred by NBNA in defending its right to monies claimed from the debtor, particular-

ly when the claim arose as a result of the debtor's default. In addition to the independent basis of the letter agreement, its reference to rights under existing loan documents is strongly supportive. The loan documents permitted attorneys' fees as allowable costs of enforcing the banking agreements. Clearly, entitlement to attorneys' fees has been established by all of the aforementioned writings. Were this not so, NBNA may still rely upon the consent order's stipulation allowing costs under § 506[b].

In accordance with the prevailing view noted above, this Court applies federal law to the disposition of the claim. Under federal law, the requirement of the presence of an underlying security agreement allowing payment of attorneys' fees is satisfied. It should be noted that, were this Court to apply state law, the same result would obtain. Notwithstanding the court's language in *Monmouth Lumber, supra,* calling for a strict construction in the interpretation of contracts of guarantee, the law of New Jersey is equally clear in calling for an interpretation based on reason and fairness. It does not torture these principles to hold that the writings herein were sufficient in scope to include the type of costs now claimed by NBNA. The trustee's argument that, under state law relating to indemnity, he was denied his right to choice of counsel is rejected out of hand.[1] The facts clearly show that the trustee was, at all times, aware of the actions of NBNA's counsel and did, indeed, consult and confer with counsel without objection.

In summary, this Court finds that NBNA is entitled to attorneys' fees pursuant to § 506[b] of the Bankruptcy Code and the aforementioned agreements. The trustee's motion is denied. An evidentiary hearing will be held to determine the sum to be allowed as attorneys' fees, payable to NBNA by the trustee.

Submit an order in accordance with the above.

1. This refers to First Jersey's litigation against NBNA.