**In re Kym J. SMOOTS, Debtor.**

**Bankruptcy No. 4–95–4513.**

United States Bankruptcy Court,
D. Minnesota.

Dec. 31, 1996.

---

Marjorie J. Holsten, Maple Grove, Minnesota, for the debtor.

Chad A. Johnson, Hellmuth & Johnson, PA, Eden Prairie, Minnesota, for creditor.

### ORDER DETERMINING SECURED CLAIM

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on the debtor's objection to the claim of the Uplands at Parkers Lake Condominium Association, Inc., and a determination of its secured claim. Marjorie J. Holsten appeared for the debtor and Chad A. Johnson appeared for the Association.

This court has jurisdiction pursuant to 11 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). On review of the parties' memoranda and affidavits, the court makes the following:

### MEMORANDUM ORDER

#### The Facts

The debtor is the owner of a condominium unit in Plymouth, Minnesota, which she purchased on approximately April 11, 1994, subject to various encumbrances, including a mortgage in favor of FBS Mortgage Corporation and the Declaration of Condominium and Bylaws of the Association. The Association is the unit owner's association charged with administering the common interest community. The debtor became delinquent in the payment of her Association assessments and late fees and on May 11, 1995, the Association hired the law firm of Hellmuth & Johnson, P.A., to attempt to collect the fees and, if necessary, foreclose the Association's lien on the debtor's condominium unit.

Hellmuth & Johnson, P.A., sent a demand letter to the debtor and when it did not receive any response, it pursued foreclosure of the Association's lien on the debtor's condominium unit. Among the services that Hellmuth & Johnson, P.A., provided were:

1. Conducting a search of the title to the condominium.
2. Drafting and preparing various foreclosure documents.
3. Publishing and serving a Notice of Foreclosure Sale.
4. Collecting necessary affidavits.
5. Drafting and preparing the Certificate of Foreclosure.
6. Preparation for the foreclosure sale.

A foreclosure sale was scheduled for August 25, 1995. However, at 8:00 a.m. that same morning, the debtor filed her petition under chapter 13 and the automatic stay prevented the Association from conducting the sale. With her petition and schedules, the debtor filed a plan proposing to cure defaults in her home mortgage and the Association's assessments. In her plan, she estimated the amount of the default to be $2,300.00, but agreed that she would pay,

under the plan, the actual amount that was in default. On September 14, 1995, the Association filed a secured claim in the amount of $4,172.92. The debtor's plan was confirmed on October 23, 1995.

On June 11, 1996, because of continuing defaults in Association fees, the Association filed a motion for relief from the automatic stay so that it could foreclose its lien on the debtor's condominium unit. The Association and the debtor settled that motion and an order was entered on July 23, 1996, memorializing the parties' agreement. In the order, I ordered the debtor to cure the three months of post-petition defaults in her Association assessments and allowed the Association to recover $400.00 in attorneys fees and costs for bringing the motion. On October 1, 1996, the debtor filed this objection to the claim of the Association. She does not dispute the amount of the Association assessments that are in default, but disputes the amount of the attorneys fees and costs that have been included as part of the Association's secured claim.

### The Law

■ Several Minnesota statutes are implicated. The first deals with the whole issue of assessment for common expenses. Among the applicable provisions is the following:

Unless otherwise required by the declarations: . . . (4) reasonable attorneys fees incurred by the association in connection with (i) the collection of assessments and, (ii) the enforcement of this chapter, the articles, bylaws, declarations, or rules and regulations, against a unit owner, may be assessed against the unit owner's unit. . . .

Minn.Stat. § 515B.3–115(h)(4).

Minn.Stat. § 515B.3–116(a) makes the assessments a lien on the owner's unit. Subdivision (h) of the same section provides that the lien may be "foreclosed in a like manner as a mortgage containing a power of sale pursuant to chapter 580, or by action pursuant to chapter 581." A later part of subdivision (h) provides:

In any foreclosure pursuant to chapter 580, 581, or 582, the rights of the parties shall be the same as those provided by law, except . . . (ii) in a foreclosure by adver-

tisement under chapter 580, the foreclosing party shall be entitled to costs and disbursements of foreclosure, and attorneys fees in the amount provided by section 582.01, subdivision 1a. . . .

Minn.Stat. § 515B.3–116(h)(4).

Since the Association sought to foreclose by advertisement, its attorneys fees are governed by § 582.01, subd. 1a. As you might expect, subd. 1a follows subd. 1 which contains a table of the amount of attorneys fees which can be charged in a foreclosure of a mortgage by advertisement. The fees increase depending on the principal amount of the mortgage. Subd. 1a then goes on to provide:

Notwithstanding subdivision 1 to the contrary, the minimum fee for foreclosure by advertisement of mortgages executed after July 31, 1992, is $500.00.

Minn.Stat. § 582.01, Subd. 1a.

Subdivision 1a was added by the Minnesota legislature in 1992. Prior to that time, the minimum fee would have been $150.00 as set out in the schedule contained in subdivision 1. The debtor argues that because the Declaration of Condominium was filed against the Association property on May 4, 1989, that the 1992 Amendment should not apply and that the table found in subdivision 1 should apply. Because of the small amount of her default, she would only be liable for the minimum of $150.00.

The Association argues that because she did not buy her unit until after the 1992 amendment she is subject to the terms of the amendment.

I think both arguments miss the mark. The Minnesota Common Interest Ownership Act, Minn.Stat. §§ 515B.1–101—515B.4–118, was not enacted until 1993. Basically, the Act applies to common interest communities created on or after June 1, 1994. Minn.Stat. § 515B.1–102(a). The new act specifically applies to "events and circumstances occurring on or after June 1, 1994." Minn.Stat. § 515B.1–102(b)(1). However, to a certain extent, the new act applies to communities created prior to that date. One of those provisions which apply to existing communi-

ties is § 116(h) dealing with foreclosures which, as we have seen, specifically incorporates subdivision 1a. of § 5821.01 regarding attorneys fees for foreclosures. Although this condominium association was created originally under the Uniform Condominium Act, Minn.Stat. §§ 515A.1–101—515A.4–117, since the defaults and foreclosure action occurred after June 1, 1994, the foreclosure provisions of the new Common Interest Ownership Act apply.

The new Act does not and never did incorporate the sliding scale of subd. 1 of § 582.01. It refers to explicitly to "the amount" in sub. 1a. The amount stated in that section is $500.00 and the fairest reading of the statute is that a flat attorneys fee of $500.00 is now provided for foreclosing Association assessments. There is no sliding scale and there really is no minimum or maximum, it is simply a fee of $500.00 as a result of the incorporation of the amount found in Subdivision 1a. Thus, I conclude that the Association is entitled to a flat fee of $500.00 for the foreclosure fees.

Lastly, § 506(b) of the Bankruptcy Code provides that an over-secured creditor may add to its allowed secured claim "any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b). The parties concede that the Association is over-secured and thus entitled to add any fees and costs provided for in their agreement.

### Applying The Law To The Facts

The prepetition Association assessments, which constitute the core of the Association's secured claim, amount to $1,944.41. To that amount, the Association has added attorneys fees and costs in the amount of $2,924.78 and continues to add additional fees and expenses as it continues to litigate over its claim. I think the claim can be broken down into several components.

■ The Association's prepetition activities consisted of a demand letter for which the Association's attorneys charged $22.50 and which can fairly be considered a "collection cost" as used in the Minnesota Statute and thus collectible from the debtor and the

foreclosure of its lien. As we have seen, its attorneys fees for foreclosing are limited to $500.00. However, the Association also incurred filing fees of $97.50, publication fees of $421.20, and sheriffs fees of $83.60 for total foreclosure costs of $602.30. Those fees are also "collection costs" as the statute is used and appropriately added to the Association's claim.

After the case was filed, the Association filed a relief from stay motion because of the debtor's continuing postpetition defaults in payment of her assessments. That motion was settled and I ordered the debtor to pay $400.00 in fees and costs for bringing that motion. That amount is also fairly added to the Association's secured claim.

■ As to the balance of the postpetition fees and costs, some amount was incurred by the Association in reviewing and monitoring the debtor's chapter 13 case and is not fairly considered a "collection cost." As to the rest, which are "collection costs," it is necessary to determine both under the Minnesota Statute and § 506(b) how much is reasonable. In the abstract there is nothing unreasonable about the fees; the fees added by the Association to its secured claim were actually incurred for time actually spent by the Association's attorney and for which he charged less than his usual hourly fee. However, without going into the numerous cases that deal with the various elements that go into determining a reasonable fee, I consider a few salient facts to be determinative. The Association is over-secured on a claim of only slightly less than $2,000.00 which the debtor proposed to pay in full in her plan. While it may be that the Association was not going to be paid as quickly as it wanted, it was going to be paid. In the event the debtor's plan failed, as an over-secured creditor with foreclosure rights, it was also fully protected. Therefore, it was simply not reasonable to spend as much time litigating with the debtor as it did. I find that an additional $250.00 in attorneys fees is a reasonable amount to be incurred in filing its proof of claim and otherwise resolving it with the debtor.

■ While of the ordinary factors are appropriate for consideration when determining the reasonable attorneys fees for an over-

**144**

secured creditor, I think that the touchstone of any such analysis is a determination of what a creditor would spend if the creditor was paying the attorney's fees and costs rather than having the ability to pass those fees and costs on to the debtor. I think it is a fair finding that a creditor like the Association, who is over-secured and certain to get paid, would not have incurred $3,000.00 in attorneys fees to collect $2,000.00 if it had to pay them out of its own pocket.

Thus, I determine the Association's secured claim to be as follows:

| | |
|---|---|
| Prepetition Assessments | $1,944.41 |
| Prepetition Collection Fees | $ 22.50 |
| Prepetition Foreclosure Fees | $ 500.00 |
| Prepetition Foreclosure Expenses | $ 602.30 |
| Fees and Expenses For Relief From Stay Motion | $ 400.00 |
| Other Postpetition Fees and Expenses | $ 250.00 |
| | |
| Total | $3,719.21 |

*Order*

THEREFORE, IT IS ORDERED: Claim no. 1 as amended by claim no. 2 filed by the Uplands at Parkers Lake Condominium Association, Inc., is allowed as a secured claim through the date of this order in the amount of $3,719.21.