**In re Alvin and Rebecca DWIGGINS,
Debtors.**

No. 6:04–bk–72946M.

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Jan. 9, 2007.

Basil V. Hicks, Jr., Little Rock, AR, for Debtors.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court is the objection of Alvin and Rebecca Dwiggins ("Debtors") to the amended claim of Elk Horn Bank & Trust Company ("EHB"), an oversecured creditor in the case. At issue is whether EHB is entitled to be reimbursed for its post-petition attorneys fees and costs pursuant to 11 U.S.C. § 506(b). EHB incurred the legal fees for bankruptcy-related services and for defending against the Debtors' state court appeal to the Arkansas Supreme Court.

On August 9, 2006, a hearing was held on the Debtors' objection in Hot Springs, Arkansas. The Court took the issue of attorneys fees under advisement.

The proceeding before the Court is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B), and the Court may enter a final judgment in this case.

## FACTS

Many of the relevant facts stem from a pre-bankruptcy loan transaction between the Debtors and EHB. On May 25, 2001, the Debtors borrowed $420,000.00 from EHB secured by a mortgage on the Debtors' property in Clark County that included their residence and a peach orchard.

The note evidencing the indebtedness contained the following provision:

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur, with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

(EHB Ex. 2 at 2.)

On January 9, 2002, a fire caused by a third party's negligence resulted in damage to the Debtors' peach orchard. (EHB Ex. 3 at 2.) The Debtors subsequently received insurance proceeds of $135,000.00 in February 2003 from the third party's insurance carrier. (EHB Ex. 3 at 2.) The insurance check listed both the Debtors and EHB as payees. (EHB Ex. 1, Agreed Decree of Foreclosure.) EHB apparently refused to endorse the check over to the Debtors, and the Debtors failed to make their note payment due on March 1. (EHB Ex. 1, Agreed Decree of Foreclosure.)

The Debtors filed suit against EHB on March 24, 2003, in the Hot Spring County Circuit Court, alleging fraud, breach of duty of acting in good faith and slander of title. (EHB Ex. 3 at 2.) On April 1, 2003, EHB filed a foreclosure action against the Debtors in the Clark County Circuit Court and then moved for a transfer of venue of the Debtors' Hot Spring County Circuit Court lawsuit. (EHB Ex. 3 at 2.) The Hot Spring County case was subsequently transferred to Clark County and was then consolidated with EHB's foreclosure action. (EHB Ex. 3 at 2.)

On April 12, 2004, the Clark County Circuit Court granted partial summary judgment to EHB regarding all claims raised by the Debtors against EHB. In particular, the court dismissed the Debtors' breach of contract claim. The Debtors claimed that EHB should have endorsed the $135,000.00 insurance check payable to both the Debtors and EHB so that the Debtors could have made their March 1 payment to EHB under the terms of the note. The circuit court ruled that under Arkansas' Uniform Commercial Code, the entire insurance proceeds should be applied to the principal indebtedness owed to EHB. (EHB Ex. 3 at 4.)

Following the circuit court's summary judgment ruling, the Debtors entered into an agreed decree of foreclosure on April 28, 2004. On the same day, the Debtors filed a voluntary Chapter 13 bankruptcy petition.

On July 22, 2004, the Debtors asked the bankruptcy court for relief from the automatic stay so that they could appeal the Clark County Circuit Court summary judgment order to the Arkansas Supreme Court. On September 14, 2004, the Court granted relief from the stay over EHB's objection that relief from stay was unnecessary.

On September 20, 2004, the Debtors filed a notice of appeal of the trial court's April 12 summary judgment order. (EHB Ex. 3 at 4.) In an opinion delivered December 8, 2005, the Arkansas Supreme Court dismissed the appeal on the grounds that it was untimely. The Arkansas Supreme Court ruled that the automatic stay, which commenced with the bankruptcy filing on April 28, did not stay the Debtors' filing of their appeal of the state court summary judgment order. Because the automatic stay did not apply to this type of proceeding, the 30-day time period in which to file a notice of appeal began to run on the date

of the entry of the order on April 12. *See* Ark. R.App. P. 4.

Within the context of the bankruptcy case, the Debtors proposed a plan to pay the original secured claim of EHB in the amount of $370,266.35. Subsequently, EHB filed an Amended Proof of Claim requesting an additional $7,084.14 in bankruptcy attorneys fees for services rendered by Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd. EHB's post-trial brief lists the following bankruptcy services for which EHB seeks fee reimbursement in its amended proof of claim: attending and examining the Debtors at the first meeting of creditors, filing EHB's proof of claim, objecting to confirmation of the Debtors' plan, objecting to the Debtors entering into a timber contract, and resisting the Debtors' motion for relief from stay regarding the state court appeal.[1]

Additionally, EHB requested $24,123.04 in attorneys fees and costs generated in defense of the appeal to the Arkansas Supreme Court by Wright, Chaney, Berry, Daniel, Hughes and Moore, P.A. The Debtors objected to these additional post-petition legal fees and costs.

### ARGUMENT

EHB argues that both the $7,084.14 in bankruptcy attorneys fees and costs and the $24,123.04 in attorneys fees and costs to defend the appeal of the summary judgment order to the Arkansas Supreme Court are recoverable under 11 U.S.C. § 506(b) because EHB's claim is oversecured.

The Debtors do not dispute that EHB is oversecured and that the fees and costs

requested are reasonable for the services provided. They argue, however, that the language in the underlying note does not provide for recovery of these attorneys fees. The Debtors contend that EHB's attorneys fees to defend the state court appeal were not incurred in a collection effort and that additional fees were not awarded to EHB by the Arkansas Supreme Court.

### DISCUSSION

With regard to oversecured claims, the Bankruptcy Code provides the following treatment:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b)(2000).[2]

■ Thus, a creditor's attorneys fees may be recovered pursuant to section 506(b) if the creditor can demonstrate the following factors: (1) that the creditor is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorneys fees. *First W. Bank & Trust v. Drewes (In re Schriock Const., Inc.)*, 104 F.3d 200, 201 (8th Cir.1997) (citing *In re Foertsch*, 167 B.R. 555, 562 (Bankr.D.N.D.1994)).

---

1. In determining whether attorneys fees should be awarded for these bankruptcy services, the Court will take judicial notice of the case docket and the motions, objections and orders filed with the Court that relate to these services.

2. Recent Amendments to the Bankruptcy Code have minimally altered the language of this provision, but those amendments are inapplicable to this case.

The awarding of fees pursuant to section 506(b) does not depend on whether the creditor requesting fees prevailed in any type of action for which the services were provided. In re *Valdez*, 324 B.R. 296, 300 (Bankr.S.D.Tex.2005). Moreover, to the extent section 506(b) conflicts with state law prohibiting attorney fee awards, state law is preempted. *In re Schriock Const., Inc.*, 104 F.3d at 202 (ruling that the plain language of section 506(b) allows attorneys fee awards without reference to contrary state law) (citing *Joseph F. Sanson Invest. Co. v. 268 Ltd. (In re 268 Ltd.)*, 789 F.2d 674, 677 (9th Cir.1986)); *White v. Coors Distributing Co. (In re White)*, 260 B.R. 870, 881 (8th Cir. BAP 2001) (emphasizing that state law does not govern the right to attorneys fees under § 506(b)); *Ryker v. Current*, 338 B.R. 642, 650 (D.N.J.2006) (stating that Congress enacted section 506(b) to enforce attorneys fees without regard to state law) (citing 4 Collier on Bankruptcy ¶ 506.04[3][a][i] ) (Alan N. Resnick & Henry J. Sommer, *et al.*, eds., 15th ed. rev.2006).

In the instant case, the Debtors do not dispute that EHB is sufficiently oversecured or that the fees are reasonable. With regard to the third factor, the creditor must prove that the relevant agreement imposes an "express and specific obligation" upon the debtor to pay the attorneys fees for which the creditor seeks reimbursement. *In re Gwyn*, 150 B.R. 150, 154 (Bankr.M.D.N.C.1993) (citing *In re Mills*, 77 B.R. 413, 417 (Bankr. S.D.N.Y.1987)). *See also In re Lopez*, 349 B.R. 671, 679 (Bankr.D.Idaho 2006) (stating the court must "look to the language of the relevant contractual instrument, and determine its breadth based on the language contained therein" in determining whether the attorneys fees are provided for in the parties' agreement) (quoting *Hassen Imports P'ship v. KWP Fin. VI (In re Hassen Imports P'ship)*, 256 B.R. 916, 925–26 (9th Cir. BAP 2000)).

The note evidencing the parties' agreement as to attorneys fees states that the Debtors agree to pay attorneys fees incurred by EHB to collect "this note" and "this debt." (EHB Ex. 2 at 2.) Collecting a debt is "anything done in an effort to secure or obtain payment of a debt or to convert property into money," including acts to protect collateral with the aim of eventual collection. *In re Williams*, 183 B.R. 895, 899 (D.Kan.1995).

In the context of section 506(b), courts have both awarded and denied attorneys fees when the underlying agreement provided for reimbursement for attorney services related to collection efforts. *See, e.g., Mfrs. Nat'l Bank v. Auto Specialties Mfg. Co. (In re Auto Specialties Mfg. Co.)*, 18 F.3d 358, 362 (6th Cir.1994) (in defending against debtor's suit alleging fraud, breach of contract, breach of fiduciary duty, and grounds to equitably subordinate creditor's claim, creditor could recover attorneys fees as costs of collection and protecting collateral as dictated by various agreements; defending the suit was crucial to creditor's ability to collect); *In re Elk Creek Salers, Ltd.*, 290 B.R. 712, 716 (Bankr.W.D.Mo. 2003) (language of the note allowing attorneys fees for collection efforts did not encompass actions to determine the existence or superiority of a lien); *In re Gwyn*, 150 B.R. at 155–56 (vast majority of legal services were for title work for title insurance company and were not necessary for collection in light of the large equity cushion provided by collateral); *Sec. & Exchange Comm'n v. M.S. Wien & Co., Inc. (In re M.S. Wien & Co.)*, 54 B.R. 183, (Bankr. D.N.J.1985) (secured creditor's costs of defending against third party's claim were collection costs as provided for in trustee's letter agreement because the suit defend-

ed the creditor's right to monies claimed from the debtor).

In resolving the question of whether the requested attorneys fees were for services related to collecting the debt, the Court will separately examine the two types of fees requested, those generated for bankruptcy services and those associated with defending against the Debtors' state court appeal.

EHB argues that it should be reimbursed $7,084.14 in bankruptcy attorneys fees and costs incurred for attending the first meeting of creditors, filing a proof of claim, objecting to confirmation of plan and to the sale of timber, and opposing the Debtors' motion for relief from stay. The Court will address each service rendered to determine if the concomitant fees were generated in an effort by EHB to collect the indebtedness.

■■■■■ A debtor in bankruptcy is required to attend and participate in a meeting of creditors where he is interrogated by a trustee and by his creditors. 11 U.S.C. § 341(a)-(e) (2000). To a creditor in a bankruptcy case, attending the meeting of creditors is the first of several essential steps in preserving a claim for its ultimate collection. Obviously, a corporation with a sizable claim in the bankruptcy, such as EHB, is best served by being represented at the 341(a) meeting by counsel who understands how bankruptcy law relates to preservation of the claim for collection.

Such representation generates fees that courts have found to be compensable under section 506(b). *See, e.g., In re Ronecker,* 204 B.R. 552, 555–556 (Bankr.E.D.Mo. 1997) (where security agreement allowed reimbursement for attorneys fees to creditor for enforcing its rights, court determined counsel's appearance at 341(a) meeting generated fees compensable under the security agreement). The Court concludes that attorneys fees for attending the first meeting were incurred to protect EHB's collateral and obtain eventual payment on the note.

■■■■ Similarly, the Court finds that attorneys fees for filing the proof of claim were incurred to collect the debt. The filing of a proof of claim is arguably the most fundamental step in collecting a debt in bankruptcy because, if allowed, it establishes the creditor's right to payment. 11 U.S.C. § 101(5)(a), 501 & 502 (2000). Moreover, the primary purpose of filing a proof of claim is to "share in any distribution." 5 Collier on Bankruptcy 501.01[1]. If a creditor wishes to be paid through a chapter 13 distribution, he must hold an allowed claim, and the filing of a proof of claim is "a prerequisite to its allowance as a claim." 5 Collier on Bankruptcy at 501.01[2][a].

Furthermore, courts construing section 506(b) have allowed creditors to recoup their attorneys fees related to filing proofs of claim. *See, e.g., In re Smoots,* 230 B.R. 140, 143 (Bankr.D.Minn.1996) (allowing some compensation, pursuant to section 506(b), for attorneys fees for filing proof of claim); *In re Stoecker,* 114 B.R. 980, 985–86 (Bankr.N.D.Ill.1990) (ruling that some fees for filing proof of claim were recoverable under language in creditor's deed of trust).

■■■■ After examining EHB's objection to confirmation of plan filed June 22, 2004, and its objection to the timber sale, the Court finds that each of these actions was undertaken with the ultimate goal of collecting the debt. The Court observes that other courts have awarded attorneys fees, pursuant to section 506(b), for bankruptcy services related to objecting to confirmation and protecting collateral. *See, e.g., In re Williams,* 183 B.R. at 899 (stating that creditor's attorneys fees related to ade-

quate protection and plan of Chapter 12 reorganization could be recovered pursuant to section 506(b) because security agreement authorized fees for services to collect on the note or realize on the collateral); *Crystian v. Mellon Bank (In re Crystian)*, 210 B.R. 956, 961 (Bankr. W.D.Pa.1997) (construing terms of note and mortgage to allow reasonable attorneys fees, pursuant to section 506(b), for objecting to proposed plan).

EHB objected to confirmation on the grounds that the plan as proposed would not have paid EHB's claim in full over the life of the plan and that the Debtors did not have sufficient income to fund the plan. A hearing on the objection was scheduled for August 31, 2004, at which time the Court sustained the objection by order entered October 19, 2004. The order required the Debtors to amend their plan, which they had already done by a proposed amended plan entered on the docket on August 30, 2004.

In the amended plan, the Debtors increased their plan payment by $6913.00 and agreed to semi-annual payments to EHB. By objecting to confirmation, EHB forced the Debtors to conform to the Bankruptcy Code's requirements regarding the proper treatment of a secured creditor's claim and enabled EHB to be paid in full in a more timely manner. The objection was done with the purpose of ultimately securing full payment on the debt.

■ Similarly, EHB's objection to the Debtors' Motion for Authorization of Timber Purchase Agreement was aimed at insuring payment on the debt. The Debtors' motion sought court approval to improve its forested real property by thinning existing timber and selling it for an estimated $10,000.00. The Debtors proposed to use the funds for spraying, spot planting, and other farm operations.

In its objection, EHB pointed out that its mortgage lien extended to all the timber on the mortgaged property; therefore, the Debtors were proposing to sell a portion of EHB's collateral. EHB argued that the proceeds from the sale of its collateral should be paid to EHB or its claim would be prejudiced. The Court approved the Debtors' motion over EHB's objection, but had EHB prevailed, the sale proceeds would have been applied to the note indebtedness. Thus, attorneys fees related to the objection, although unsuccessful, were incurred in order to collect the debt.

■ Next the Court will examine whether the terms of the note permit attorneys fees related to EHB's objection to the Debtors' motion for relief from stay. Under the theory that the bankruptcy petition stayed the Debtors' filing a notice of their state court appeal, the Debtors asked the Court for relief from the stay, which the Court granted over EHB's objection. In objecting, EHB reasoned that the motion for relief from stay did not stay any appeal by the Debtors of an action brought by them against EHB, and, therefore, relief from stay was unnecessary.

Had the Court adopted EHB's reasoning and denied relief from stay as unnecessary, the Debtors might have been dissuaded from proceeding with an appeal. While not precluding the Debtors from pursuing the appeal, an adverse bankruptcy court ruling on the Debtors' motion would have supported EHB's position that the appeal would eventually be dismissed by the Arkansas Supreme Court as untimely. Thus, EHB's objection was a strategic move designed to discourage the Debtors from taking an appeal.

Because EHB's objection was intended to preempt the Debtors' efforts to appeal the state court summary judgment order,

the attorneys fees related to the objection are akin to the attorneys fees incurred in the actual defense of the appeal. The attorneys fees generated by the objection are recoverable to the same extent that fees incurred for defending the appeal are compensable under section 506(b).

 The question then is whether the $24,123.04 in fees directly related to the defense of the appeal are in the nature of an action to collect the debt owed to EHB by the Debtors. In the Arkansas Supreme Court's opinion dismissing the Debtors' appeal, the court states that one of the Debtors' arguments on appeal was that the trial court erred in awarding the insurance proceeds to EHB. The Supreme Court stated that the trial court determined that the $135,000.00 in insurance proceeds should be applied to the Debtors' principal indebtedness to the Bank. (EHB Ex. 3 at 4.)

Therefore, as to the Debtors' claim to the insurance proceeds, EHB had prevailed in the lower court and the result was that EHB received a $135,000.00 payment on its principal indebtedness. In defending the summary judgment order, EHB was protecting its right to the payment of $135,000.00 as determined by the court below.

Prevailing on a procedural issue, EHB prevented the Debtors from appealing the substantive issues, one of which was the trial court's ruling on EHB's entitlement to the insurance proceeds as payment on the note. By successfully defending the trial court's ruling, EHB secured its right to payment of a portion of its indebtedness. Securing a right to payment is a step in the eventual collection of a debt. *In re Williams*, 183 B.R. at 899.

Thus, attorneys fees related to the objection to the motion for relief from stay and to the defense of the state court appeal resulted from efforts to collect the indebtedness on the note. The fact that the Arkansas Supreme Court did not award EHB its attorneys fees incurred on appeal is irrelevant in determining whether EHB is entitled to its attorneys fees pursuant to section 506(b) of the Bankruptcy Code.

**CONCLUSION**

Attorneys fees for bankruptcy-related services and for defending against the Debtors' appeal to the Arkansas Supreme Court resulted from EHB's efforts to collect the indebtedness owed by the Debtors. Because the Debtors agreed in the note to pay such attorneys fees, all requirements of section 506(b) have been satisfied. Therefore, EHB is entitled to recover the post-petition attorneys fees at issue.

IT IS SO ORDERED.